Argued and submitted March 7, 1997, decision of the Court of Appeals affirmed in part and reversed in part; judgment of the circuit court reversed, and case remanded to circuit court for further proceedings January 22, 1999

## In the Matter of the Marriage of

### David MASSEE,
*Respondent on Review,*

*and*

### Constance Genevieve MASSEE,
*Petitioner on Review.*

## (CC 93C-31338; CA A84859; SC S43076)

970 P2d 1203

J. Michael Alexander, of Burt, Swanson, Lathen, Alexander, McCann & Smith, Salem, argued the cause and filed the briefs on behalf of petitioner on review.

John Hemann, of Garrett, Hemann, Robertson, Paulus, Jennings & Comstock, P.C., Salem, argued the cause and filed the briefs on behalf of respondent on review.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, and Kulongoski, Justices.**

KULONGOSKI, J.

** Fadeley, J., retired January 31, 1998, and did not participate in this decision. Graber, J., resigned March 31, 1998, and did not participate in this decision.

## KULONGOSKI, J.

We address two questions in this marital dissolution action. The first question is whether the appreciation, during the marriage, of assets brought to the marriage by husband and held separately by him is a marital asset under ORS 107.105(1)(f) (set forth below). The trial court divided the marital property without deciding this question. We conclude, as did a divided Court of Appeals sitting en banc, that such appreciation is a marital asset.

The second question is whether wife is entitled to share in that marital asset. The trial court concluded that wife was not entitled to share in the appreciation of husband's separately held assets and awarded husband all the interest in those assets, including any appreciation in the value of those assets that occurred during the marriage. On appeal, the Court of Appeals concluded that husband successfully rebutted the presumption in ORS 107.105(1)(f) that both spouses contributed equally to the acquisition of marital assets and affirmed the trial court's division of the marital property. *Massee and Massee*, 138 Or App 589, 599, 601, 911 P2d 320 (1996) (en banc). As we explain *post*, we affirm in part and reverse in part the decision of the Court of Appeals, reverse the judgment of the circuit court, and remand the case to the circuit court for further proceedings.

The Court of Appeals reviewed this case *de novo*. Pursuant to ORS 19.125(4), this court also may review *de novo*, or it may limit its review to questions of law. The facts relevant to the resolution of the issues before us are not in dispute, although their legal significance is. Accordingly, there is no reason to review *de novo*. *Denton and Denton*, 326 Or 236, 238, 951 P2d 693 (1998). We take the following undisputed facts from the opinion of the Court of Appeals and from the record.

The parties were married in February 1991, and husband filed for dissolution of the marriage in February 1993. Husband has been a farmer for most of his adult life. At the time of the marriage, he owned substantial farming, business, and real estate holdings. Those holdings included the Mission Nut Company, the Mission Cherry Company, a farm,

a residence, a large tract of land known as the "bayou property," and commercial buildings in Salem and Wilsonville. The Wilsonville building contained a retail hardware business and related equipment that husband owned.

Wife brought into the marriage a car and some personal items. Before the marriage, wife worked as a clerk at a local bank and had completed a variety of classes at Chemeketa Community College. Her principal source of income before the marriage was the sale of stocks given to her by her mother. At the time of the marriage, wife was employed part-time as a manicurist. Wife also brought into the marriage a small amount of personal debt, less than $5,000. Husband paid that debt during the marriage.

During the first year of the marriage, wife worked infrequently as a manicurist. She also worked, without pay, for no more than four months as manager of husband's hardware store. Wife worked between 45 and 70 hours during one hazelnut harvest and was paid by husband for that work. She worked for husband between 10 hours and 50 hours during one cherry harvest. Husband did not pay her for that work. On occasion, wife also provided refreshments to farmers while they waited to unload crops at husband's cherry and hazelnut businesses.

Early in the marriage, wife expressed a desire to attend school and acquire additional vocational training. Husband requested that wife stay home and manage the household, and he assured her that he would take care of her in the future and that she need not work outside the home. Wife acquiesced in that matter.

The parties separated briefly in August 1991, approximately six months after their marriage. The parties separated again in late 1991. In November 1991, wife stopped working at the hardware store. She took approximately $5,000 from the hardware store business account. Contemplating filing for dissolution of the marriage, she spent about $1,500 of that money on legal fees and about $300 on food and incidentals. She later returned the remainder to husband's accounts.

Husband did not place wife's name on any of his properties. Wife did not contribute any of her separate money to the upkeep or improvement of the businesses, equipment, or properties that husband brought into the marriage. Throughout the marriage, husband kept all his bank accounts separate from wife's, with two exceptions. Wife was on the hardware store business account during her tenure as manager of that business. The parties also maintained a joint checking account for household expenses. Husband typically deposited $550 each month into that joint checking account, which wife then used for groceries, clothing, and incidental expenses. Husband paid the home mortgage and all improvements, repairs, and utilities from his separate accounts.

Throughout the marriage, except for the periods when the parties were separated, wife worked as a homemaker, in addition to the occasional paid and unpaid employment in husband's businesses noted above. She did the shopping, cooking, errands, and laundry, and she generally managed the marital household. Wife also spent approximately 1,000 hours improving the exterior appearance of the family residence, including spraying for weeds, power-washing the house and carport, and maintaining and improving landscaping.

The parties' final separation occurred in early 1993, and husband filed for dissolution of the marriage in February 1993. The trial court concluded that the parties had not commingled their financial affairs, that the parties easily could be restored to their premarital financial positions, and that the property division should be in the nature of a "rescission," "notwithstanding whatever appreciation occurred in the assets." *Massee*, 138 Or App at 592. Accordingly, the trial court did not determine husband's exact net worth either at the time of marriage or at the time of dissolution. The trial court awarded husband all the assets that he brought into the marriage, including any appreciation of those assets that occurred during the marriage. *Id.* The trial court awarded wife the property she brought into the marriage and six months of spousal support at $1,750 per month, as well as most of the personal property acquired jointly during the marriage, with an approximate total value of $17,250. *Id.*

Wife appealed, assigning error to the trial court's division of property. She argued that the trial court should have awarded her a share of the appreciation, during the marriage, of the assets that husband brought into and held separately during the marriage, because such appreciation is a marital asset. *Id.* at 592-93. Wife also argued that the trial court's application of the rescission doctrine, without regard to ORS 107.105(1)(f), failed to recognize her efforts as a homemaker and ignored the statutory presumption of equal contribution to the acquisition of marital assets. *Id.* at 593. The Court of Appeals concluded that the appreciation, during the marriage, of husband's separately held assets is a marital asset, and that the statutory rebuttable presumption of equal contribution, ORS 107.105(1)(f), applied to the acquisition of that appreciation. *Id.* at 594-96. The court then affirmed the trial court's property division after concluding that wife did not contribute, either directly or indirectly, to the appreciation of husband's separately held assets, and that husband thus had overcome the statutory rebuttable presumption of equal contribution. *Id.* at 599-600. We allowed wife's petition for review.

■■ We begin our analysis with the pertinent statutory wording. ORS 107.105(1)(f) governs the division of marital property in a marital dissolution action. That paragraph is long, complicated, and somewhat cumbersome. The first, third, and fourth sentences of paragraph (1)(f) are relevant to this case. We quote those sentences as they appear in the statute:

"(1) Whenever the court grants a decree of marital annulment, dissolution or separation, it has power further to decree as follows:

"* * * * *

"(f) For the division or other disposition between the parties of the real or personal pro erty, or both, of either or both of the parties as may be just nd proper in all the circumstances. * * * The court shall nsider the contribution of a spouse as a homemaker as a c ntribution to the acquisition of marital assets. There is a ebuttable presumption

that both spouses have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held."[1]

In interpreting the wording of a statute, this court's task is to discern the intent of the legislature. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). We discern that intent by examining, first, the text and context of the statute. *Id.* at 610-11. The context includes "other provisions of the same statute and other related statutes," *id.* at 611, as well as relevant judicial construction of those statutes. *See Owens v. Maass*, 323 Or 430, 435, 918 P2d 808 (1996) (context includes judicial constructions of earlier versions of relevant statutes). If our analysis of those sources discloses the legislature's intent, we proceed no further. *PGE*, 317 Or at 611.

The legislative intent underlying ORS 107.105(1)(f) is clear from the text and context of the statute. The overall goal of paragraph (1)(f), as indicated by its first sentence, is a distribution of marital property[2] that is "just and proper in all the circumstances." *See, e.g., Denton*, 326 Or at 246 ("The goal continues to be the establishment of a property division that is just and proper."). The remainder of ORS 107.105(1)(f) lists specific circumstances that the court may encounter in making a division of marital property and specifically directs the court as to how it should treat those circumstances when making a property division. The statute thus announces

---

[1] The 1995 amendments to ORS 107.105 do not affect the outcome of this case. *See* Or Laws 1995, ch 22, § 1; Or Laws 1995, ch 608, § 3.

[2] ORS 107.105(1)(f) creates two classes of property—marital property and marital assets. *Pierson and Pierson*, 294 Or 117, 121-22, 653 P2d 1258 (1982). Marital property is the "real or personal property, or both, of either or both of the parties," and constitutes the entire class of property subject to the dispositional authority of the court in a marital dissolution action. ORS 107.105(1)(f); *Pierson*, 294 Or at 121. "Marital assets" include all the "real or personal property, or both, acquired by either of the spouses, or both, during the marriage." ORS 107.105(1)(f); *Stice and Stice*, 308 Or 316, 325, 779 P2d 1020 (1989); *Pierson*, 294 Or at 121-22. "Marital assets" do not include assets brought into the marriage by either spouse, nor do they include assets acquired after dissolution of the marriage. *Id.* at 121. Marital property is a larger class of property than marital assets: "[p]roperty may be subject to the dispositional authority of the court, yet not be a marital asset." *Stice*, 308 Or at 325.

principles that are the guide to the court's exercise of its discretion when dividing marital property. *See Pierson and Pierson*, 294 Or 117, 120, 653 P2d 1258 (1982) (so holding; construing *former* ORS 107.105(1)(e), *renumbered as* ORS 107.105(1)(f)); *Haguewood and Haguewood*, 292 Or 197, 199-204, 638 P2d 1135 (1981) (same). Each of the three quoted sentences in paragraph (1)(f) states a significant component of the legislature's policy regarding the division of property in a marital dissolution action. Accordingly, we analyze each sentence in detail.

As noted above, the first sentence of paragraph (1)(f) grants the court broad authority to make a "division or other disposition" of the parties' property "as may be just and proper in all the circumstances." ORS 107.105(1)(f). That authority is limited, however. The third and fourth sentences of paragraph (1)(f) create two requirements that guide the court in deciding how to exercise the authority granted by the first sentence.

■ The third sentence of paragraph (1)(f) applies if, during the marriage, one spouse was a "homemaker." The statute provides no definition of that term. Thus, we rely for the meaning of the term "homemaker" on its common dictionary definition:

> "one that makes a home: one whose occupation is household and family management—usu. used of a wife and mother as distinguished from a paid housekeeper." *Webster's Third New Int'l Dictionary*, 1083 (unabridged ed 1993).

The parties often will agree, as they apparently did here, that one spouse functioned during the marriage as a homemaker. If the parties do not agree, the court must decide from the evidence whether the party who claims to have functioned as a homemaker during the marriage has proved that fact.

■ The third sentence of ORS 107.105(1)(f) requires recognition of the homemaker spouse as an economic contributor to the marriage, rather than as a passive recipient of economic benefits provided by the breadwinner spouse. *See, e.g., Pierson*, 294 Or at 122 (stating principle). A homemaker spouse contributes to the acquisition of marital assets,

because the performance of domestic tasks by one spouse frees the other spouse to devote energy and concentration to other tasks that may generate marital assets. *See, e.g., Denton*, 326 Or at 243 (wife's full-time work outside of the home and her performance of homemaker tasks frees husband to devote energy and concentration to medical school studies and dermatology internship).

The third sentence of paragraph (1)(f) has two significant features. First, that sentence requires the court to determine that a homemaker spouse made "*a* contribution" (emphasis added) to the acquisition of marital assets. That sentence prohibits the court from determining that the homemaker spouse made *no* contribution to the acquisition of marital assets simply because that spouse attended to the home and family and, consequently, played no direct role in the business or other activity that created marital assets. Second, that sentence does not assign any particular evidentiary weight to the homemaker's contribution. The court must determine the magnitude and, thus, the legal effect of a homemaker's contribution to the acquisition of marital assets in accordance with the evidence in each case.

The fourth sentence of paragraph (1)(f) addresses the manner in which the court determines the comparative evidentiary weight of the parties' respective contributions to the acquisition of marital assets. That sentence creates a rebuttable presumption that both spouses have contributed equally to the acquisition of marital assets.[3]

The rebuttable presumption created by the fourth sentence of paragraph (1)(f) functions in the same manner as any other rebuttable presumption. The basic fact required for the operation of the presumption of equal contribution in paragraph (1)(f) is that the parties acquired property during their marriage. If a party establishes that fact, then the court, in the absence of rebuttal evidence, is bound to accept

---

[3] A presumption is a rule of law requiring that, once a basic fact is established, the factfinder must find a certain presumed fact, in the absence of evidence rebutting that presumed fact. Laird C. Kirkpatrick, *Oregon Evidence*, 72 (3d ed 1996). A presumption "may be created by statute if there is some justification of public policy, or a rational connection between the fact proved and the fact presumed." *State Land Board v. United States*, 222 Or 40, 50, 352 P2d 539 (1960), *reversed on other grounds*, *United States v. Oregon*, 366 US 643, 81 S Ct 1278, 6 L Ed 2d 575 (1961).

as true that the parties contributed equally to the acquisition of the marital assets. If neither party seeks to rebut the presumption of equal contribution, then the court has no occasion to consider or compare the parties' actual contributions, including the contribution of a homemaker spouse, to the acquisition of marital assets. In that type of case, paragraph (1)(f) directs that the court presume that the parties' relative contributions to the acquisition of marital assets were equal. The case at bar is not that type of case.

 If either or both of the parties seek to rebut the presumption of equal contribution, then the burden of proof identified in *Stice and Stice*, 308 Or 316, 326, 779 P2d 1020 (1989), applies:

> "OEC 308, which is applicable to marital dissolution cases, provides:
>
>> " 'In civil actions and proceedings, a presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed · fact is more probable than its existence.'
>
> "The spouse disputing the presumption of equal contribution has the burden of proving by a preponderance of the evidence that it is more probable than not that the other spouse did *not* contribute equally to the acquisition of the property. OEC 308; ORS 107.105(1)(f)." (Emphasis in original.)

In deciding whether either party has rebutted the presumption of equal contribution, the court may consider any admissible evidence that is probative of the question whether the parties contributed unequally to the acquisition of marital assets.

██ ██ In assessing the magnitude of the homemaker spouse's contribution, and in comparing the homemaker spouse's contribution to that of the breadwinner spouse in order to determine whether the presumption of equal contribution is rebutted, the court must refrain from either overvaluing or undervaluing the contribution of the homemaker spouse merely because the homemaker spouse made that contribution in the context of the household or the family, rather than in a commercial or other nondomestic context. The court also must keep in mind that, in the categorical

sense, a homemaker spouse's contribution in a domestic setting is indistinguishable analytically from a breadwinner spouse's contribution to the acquisition of marital assets in a business or other nondomestic setting. *Stice*, 308 Or at 329.

In deciding whether the presumption of equal contribution is rebutted, the court first must determine the magnitude of each spouse's overall contribution to the acquisition of marital assets from evidence in the record. If one spouse is a homemaker, that determination necessarily will include an assessment of the homemaker spouse's contribution to the enterprise of homemaking.[4] A homemaker spouse's overall contribution may consist of a combination of domestic contributions and economic or other nondomestic contributions.[5]

Once the court has determined each spouse's overall contribution to the acquisition of marital assets, the court compares the respective contributions of the spouses. The ultimate question is whether the spouse seeking to rebut the presumption of equal contribution has proved, by a preponderance of the evidence, that the other spouse did not contribute equally to the acquisition of marital assets. If the court determines that the presumption of equal contribution is rebutted, the presumption drops from the case and the court divides the property according to the magnitude of each spouse's contribution to the acquisition of marital assets. In other words, the court distributes the marital assets without regard to any presumption, but in a manner that is just and proper in all the circumstances, including the proven contributions of the parties to the acquisition of marital assets.

We now turn to the question whether the Court of Appeals correctly applied ORS 107.105(1)(f) in this case. We begin by inquiring whether the appreciation, during the marriage, of husband's separately held assets is a marital asset.

---

[4] "Homemaking" is "the creation and maintenance of a wholesome family environment." *Webster's Third Int'l Dictionary*, 1083 (unabridged ed 1993).

[5] This court said in *dictum* in *Stice*, 308 Or at 329, that the homemaker provision in ORS 107.105(1)(f) may be applied only to support the presumption of equal contribution, but not to rebut the presumption of equal contribution in favor of the homemaker spouse. On further reflection, we withdraw that comment. ORS 107.105(1)(f) entitles either or both of the spouses to attempt to rebut the presumption of equal contribution.

As noted above, 328 Or at 201 n 2, ORS 107.105(1)(f) creates two classes of property—marital property and marital assets. *Pierson*, 294 Or at 121-22. Marital property is "the real or personal property, or both, of either or both of the parties," and constitutes the entire class of property subject to the dispositional authority of the court in a marital dissolution action. ORS 107.105(1)(f); *Pierson*, 294 Or at 121. "Marital assets" include all the "real or personal property, or both, acquired by either of the spouses, or both, during the marriage." ORS 107.105(1)(f); *Stice*, 308 Or at 325; *Pierson*, 294 Or at 121-22.

To determine whether the appreciation, during the marriage, of husband's separately held assets constitutes a marital asset under ORS 107.105(1)(f), we first must determine whether the appreciation of those assets is "property." Second, we must determine whether the "acquisition" of that property occurred during the marriage. ORS 107.105(1)(f); *Stice*, 308 Or at 325; *Pierson*, 294 Or at 121-22.

The word "property" means something that is or may be owned or possessed, or the exclusive right to possess, use, enjoy, or dispose of a thing. *Webster's Third New Int'l Dictionary* at 1818. Thus, the appreciation of property is itself property. It may be owned or possessed, and rights of possession, use, and enjoyment attach to it. We conclude that the appreciation, during the marriage, of husband's separately held assets is "property" as that word is used in ORS 107.105(1)(f).

"Acquisition" means "the act or action of acquiring." *Webster's Third New Int'l Dictionary* at 19. The parties here agree that the marital asset at issue in this case was acquired during the marriage.

Because the appreciation, during the marriage, of husband's separately held assets is property, and because the acquisition of that property occurred during the marriage, we hold that any such appreciation is a marital asset. ORS 107.105(1)(f).

That holding is consistent with this court's prior decisions interpreting the term "marital assets" in ORS 107.105(1)(f). In *Pierson*, 294 Or at 122-23, the court held

that property inherited solely by the wife, during the marriage, constituted "marital assets." In *Stice*, 308 Or at 328, the court held that stock acquired during the marriage and held separately by one spouse constituted "marital assets," as did the appreciation, during the marriage, of that stock. "Marital assets" also include property received as a gift by one spouse during the marriage, *Jenks and Jenks*, 294 Or 236, 240, 656 P2d 286 (1982), and property acquired by one spouse after separation but before dissolution of the marriage. *Lemke and Lemke*, 289 Or 145, 148, 611 P2d 295 (1980). The fact that property acquired during the marriage is solely in one spouse's name does not change its characterization as a marital asset. ORS 107.105(1)(f); *Stice*, 308 Or at 325; *Jenks*, 294 Or at 241.

■ Because the appreciation, during the marriage, of husband's separately held assets is a marital asset, the rebuttable presumption of equal contribution in ORS 107.105(1)(f) applies. The record in this case indicates that wife generally managed the marital household, attending to the cooking, cleaning, shopping, and laundry, and that she also helped maintain the family home, grounds, and landscaping. She thus was a homemaker. ORS 107.105(1)(f); *Jenks*, 294 Or at 241; *Pierson*, 294 Or at 122; *Engle and Engle*, 293 Or 207, 213-15, 646 P2d 20 (1982).

■ As noted above, there is no difference in kind, analytically, between husband's contribution to the acquisition of the marital assets at issue here and wife's homemaker contribution to that acquisition. The only difference may be one of magnitude. Husband, here the spouse challenging the presumption of equal contribution, must prove by a preponderance of the evidence that wife did not contribute equally to the acquisition of the appreciation, during the marriage, of husband's separately held assets. *Stice*, 308 Or at 236.

The Court of Appeals concluded that husband successfully rebutted the presumption of equal contribution. In reaching that conclusion, the court said:

"The businesses, real property and equipment have always been in husband's name alone. All business accounts have been kept separate from wife, and wife had no power to

draw funds from them. Husband made all financial contributions to the maintenance, operation and improvement of the businesses, and he alone was responsible for and paid all debts that were incurred in operating them. Husband alone was responsible for managing the businesses.

"Wife did briefly work as a manager of husband's hardware store. She also worked for approximately one week on a single hazelnut harvest. She occasionally did 'errands.' And she provided refreshments to visiting farmers one season as they unloaded their crops. The record shows that, apart from those isolated instances of assistance, wife did not regularly contribute to the operation of the business or in any other way directly or indirectly contribute to the appreciation in the value of the assets at issue." *Massee*, 138 Or App at 599-600.

The question becomes whether, in deciding that husband had rebutted the presumption of equal contribution, the Court of Appeals gave the statutorily required consideration to wife's contribution as a homemaker. We conclude that it did not. The court's findings regarding wife's contribution make no mention, let alone demonstrate consideration, of wife's homemaker role. The court noted that "wife did not regularly contribute to the operation of the business." However, the court also found that wife "did not in any other way directly or indirectly contribute to the appreciation in the value of the assets at issue." It may be that wife's contribution as a homemaker to the appreciation of the asset in question was not a "direct" one. However, the court's finding that wife, as a homemaker, failed to make even an *indirect* contribution improperly deprives wife of the consideration of her homemaker contribution to which she is entitled by ORS 107.105(1)(f). The court cannot decide lawfully whether husband has rebutted the presumption of equal contribution unless it first gives the required consideration to wife's contribution as a homemaker to the acquisition of marital assets. The Court of Appeals incorrectly concluded that husband had rebutted the statutory presumption of equal contribution to the acquisition of marital assets in ORS 107.105(1)(f), because that court, in its analysis, did not give proper consideration to wife's contribution as a homemaker. If proper consideration were given to the record before the court at this time, including wife's homemaker contribution,

then the question whether husband has carried his burden of proof and rebutted the statutory presumption of equal contribution is indeed a close one.

▇▇▇ This court ordinarily would resolve this case in one of two ways. The first possibility is that this court review *de novo* pursuant to ORS 19.125(4), make findings of fact and conclusions of law, and modify the trial court's judgment accordingly. As noted above, 328 Or at 197, we reject that approach. The second possibility is that this court remand the case to the Court of Appeals for further consideration in light of this opinion. This would allow the Court of Appeals to give the necessary consideration to wife's homemaker contribution, and to then decide whether husband had rebutted the presumption of equal contribution. We reject that approach as well. The record in this case lacks evidence on several important facts, including husband's net worth at the time of marriage and at the time of dissolution, which likely will influence, if not control, any ultimate property division after remand. Resolution of this case thus requires further development of the factual record. Consequently, we remand the case to the trial court for the taking of additional evidence and reconsideration in light of this opinion.

We address one further issue that may arise on remand. The Court of Appeals affirmed the trial court's reliance on a "rescission" approach to the division of marital property. Under that approach, a court, in dividing the marital property upon dissolution of a "short-term" marriage, seeks to place the parties "as nearly as possible in the financial position they would have held if no marriage had taken place." *See, e.g., York and York*, 30 Or App 937, 939, 569 P2d 32 (1977) (so stating).[6] This court first applied that approach in *Jenks*. In *Jenks*, however, this court modified the rescission approach to marital property division and focused not on the duration of the marriage but, instead, on the extent to which the parties had "commingled" their financial affairs. 294 Or at 242.

---

[6] *York* predates the adoption in 1977 of the modern version of the property division statute, *former* ORS 107.105(1)(e), *renumbered as* ORS 107.105(1)(f).

■ A court's reliance solely on the concept of a "short-term" marriage, as defined either by *York* or by *Jenks*, as a criterion that compels restoration of property held by the parties before marriage will lead to analytical mistakes. The factors set forth in ORS 107.105(1)(f) are the guide to the court's discretion in dividing marital property. It is not proper for the court to focus solely on either the duration of the marriage or the extent to which the parties commingle their financial affairs when dividing that marital property. *See Miller and Miller*, 294 Or 660, 664-66, 661 P2d 1361 (1983) (emphasizing that statutory factors control property division on dissolution of marriage, and rescission is appropriate only after giving due consideration to those factors). Only after the trial court has completed its task under ORS 107.105(1)(f) will the court be in a position to achieve the just and proper disposition that the law requires. ORS 107.105(1)(f).

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is reversed. The case is remanded to the circuit court for further proceedings.