Argued and submitted July 21, 1998, judgment modified on appeal and cross-appeal March 17, 1999

In the Matter of the Marriage of

Lorella J. HALL,
*Appellant - Cross-Respondent,*
*and*

Alan L. HALL,
*Respondent - Cross-Appellant.*

(96-01-37207; CA A100167)

977 P2d 387

Max Merrill argued the cause for appellant - cross-respondent. With him on the briefs was Merrill, O'Sullivan, MacRitchie, Petersen & Dixon, LLP.

Martin J. Birnbaum argued the cause and filed the brief for respondent - cross-appellant.

Before De Muniz, Presiding Judge, and Haselton and Linder, Judges.

HASELTON, J.

## HASELTON, J.

Wife appeals from a dissolution judgment, challenging the trial court's division of property. ORS 107.105. She assigns error to the trial court's determination that certain investment accounts (Waterhouse accounts) were "separate" property rather than marital assets, and argues that the trial court's division of the accounts resulted in an inequitable distribution. Husband cross-appeals, also assigning error to the property distribution. We agree with wife that, to the extent the Waterhouse accounts contain marital assets, they must be considered in the equal distribution of marital assets and, consequently, we modify the judgment. We also modify the judgment on cross-appeal.

The parties were married for 15 years[1] and have no children from this marriage. At the time of dissolution, wife was 60 years old, and husband was 73. Wife has not worked since the parties' separation and lives with a son from a previous marriage and provides care to his children. Husband, although he did not have definite plans, testified at trial that he was semi-retired and that he would like to retire fully within the year.

The assets in husband's name at the time of marriage included a house in La Grande, adjoining vacant land, a commercial building, 30.11 acres on Wallowa Lake, a cabin on 19 acres adjacent to the Wallowa Lake property, two notes receivable from the sale of property, office equipment, and stocks, bonds and various investment accounts. The value of those assets at the time of the marriage was $311,000. Wife brought personal property and cash into the marriage with a total value of approximately $20,000.

After the parties married, they moved into the La Grande house. They opened a joint checking account, and-

---

[1] Although the total duration of the marriage was 15 years, the parties had been separated for one year at the time of trial. We note that the parties were married twice, once in 1976 for seven months, and then again in 1981. Only the 1981 marriage and its dissolution judgment are relevant here.

wife's name was added to husband's business checking account, the various investment accounts, and the stocks and bonds.

In 1982, approximately a year after they were married, the parties separated for seven months. During that time, they entered into negotiations for a dissolution settlement. As part of those negotiations, wife executed a power of attorney granting husband the authority to transfer all the jointly held investment accounts, stocks, and bonds into his individual name. Despite their subsequent reconciliation, husband transferred all the investments into his individual name, where they remained throughout the marriage. Husband testified that the transfer of the investments was not a result of the dissolution negotiation but, rather, was a joint decision to establish separate retirement accounts.

During the marriage, the parties generated significant income. Husband had been a doctor of chiropractic medicine for over 30 years and maintained a private practice throughout the marriage. He operated the chiropractic business initially as a sole proprietorship and later, during the last few years of the marriage, as a corporation which allowed him to draw social security income benefits.[2] Throughout the marriage, wife worked for husband full-time, plus half days on Saturday. During the early years, while the business was a sole proprietorship, wife did not receive a salary for those services. Rather, husband merely took "draws" from the chiropractic practice's income, which did not differentiate between husband's and wife's contribution to the practice. After the practice was incorporated, wife was paid a salary as an employee, and husband opened a retirement account (Waterhouse SEP) as part of her employment compensation. During the years that the chiropractic practice was a sole proprietorship, the parties paid their living expenses with the draws of income from the chiropractic business; after the incorporation, those expenses were paid-

---

[2] The year of incorporation is not established on this record, although wife testified it was "several years ago."

primarily from wife's salary. Over the course of the marriage, husband also collected over $188,000 in rental income from his commercial property, significant interest income on the notes receivable, and social security income benefits. With the exception of the Wallowa Lake property, the parties' property increased significantly in value during the marriage, and they accumulated significant assets. The parties also acquired antique cars valued at $99,750, as well as office equipment and personal property.

The parties opened six investment accounts during the marriage, one with Smith-Barney, and five accounts that the parties refer to as the "Waterhouse accounts." Two of the Waterhouse accounts were held solely in wife's name: her employment-related SEP account worth $19,905, and an IRA account worth $13,491. The source of the funds in the IRA is unclear on this record. Three of the Waterhouse accounts were held solely in husband's name and were worth $571,157.[3] Husband testified that his Waterhouse accounts contained some of his premarital investments, as well as property acquired during the marriage, including income from the rental property, his social security benefits, an $8,000 inheritance, and interest collected on the notes receivable.

Throughout the marriage, in addition to his work as a chiropractor, husband controlled and managed the parties' finances. He also made noneconomic contributions to the acquisition of marital assets. Specifically, he worked around the properties doing repairs, maintenance, and improvements. Throughout the marriage, wife, in addition to her full-time work in the chiropractic business, did the cooking, cleaning and laundry for the parties. Additionally, she made other noneconomic contributions to the acquisition of marital assets. Those contributions included stacking and hauling firewood, which provided the sole source of heat for their home, yard work, assisting in the maintenance and improvement of the commercial property—including reroofing and

---

[3] The values of the five Waterhouse accounts were derived from husband's exhibits at trial that were incorporated by reference in his amended statement. *See* UTCR 8.010(4). Wife adopted those values in her opening brief; husband does not dispute them.

cleanup during remodeling of that property, maintenance of the home and vacant land, and assisting husband in building a bridge as access between the two Wallowa Lake properties.

After trial, the court awarded husband all the real property, his three Waterhouse accounts, and one half of the remaining property.[4] The value of property received by husband was $855,424.50. The trial court awarded wife her two Waterhouse accounts, the remaining half of the divided property and, a $187,867.50 equalizing judgment, representing one half the value of the parties' cabin on Wallowa Lake, one half the value of the appreciation in husband's real property, and one half the value of the rental income from the commercial property collected during the marriage. The total value of property received by wife was $308,148.50.[5] In dividing the property, the court reasoned that the real property was husband's premarital property and that the Waterhouse accounts were separate, not marital, assets.

On appeal, wife challenges the trial court's property division and, particularly, its treatment of the increase in the Waterhouse accounts as separate, rather than marital assets. Wife asserts that the difference of $547,276 between the parties' recovery ($855,424.50 verses $308,148.50) is insupportable to the extent it exceeds the $251,000 net difference between the values of the assets husband and wife brought into the marriage.[6] The crux of the dispute, as wife frames it, is the court's treatment of the Waterhouse accounts as being "separate" property in their entirety. Wife does not dispute that the premarital funds that husband invested in the accounts are properly treated as "separate"

---

[1] The trial court did not value the Waterhouse accounts. *See* n 3, above. Our calculation of the value of the awards is based on our review of the record.

[5] The parties stipulated to the equal division of the value of the cabin. The court determined that the rental income was a marital asset, *Pierson and Pierson,* 294 Or 117, 121-22, 653 P2d 1258 (1982), and that the appreciation of the real property was a marital asset. *Stice and Stice,* 308 Or 316, 324, 779 P2d 1020 (1989).

[6] That $251,000 net difference between the values of the assets husband and wife brought into the marriage is based on the value of the net assets husband brought to the marriage, $311,000, minus both the value of assets wife brought to the marriage ($20,000) and the value of the cabin ($40,000), an asset husband brought to the marriage, but which was sold and repurchased during the marriage. Although wife's brief placed a $36,000 value on the cabin, our review of the record disclosed that the proper value is $40,000.

property but asserts that that contribution is accounted for, and included in, the $251,000 "credit" and that the court erred in failing to treat the balance of the accounts, representing postmarital contributions and appreciation, as marital assets. Wife further argues that husband failed to rebut the presumption of equal contribution as to those assets. ORS 107.105(1)(f). As amplified below, we agree with wife in both respects.

■ Under ORS 107.105(1)(f),[7] "marital property" is all of the real and personal property of the parties, including property acquired prior to marriage. Marital property is within the dispositional authority of the court. *Stice and Stice*, 308 Or 316, 324-25, 779 P2d 1020 (1989). All property[8] acquired during the marriage, whether it is held jointly or separately, is considered "marital assets," subject to a presumption of equal contribution and distribution. *See Massee and Massee*, 328 Or 195, 205, 970 P2d 1203 (1999). Where, as here, one spouse challenges the statutory presumption of equal contribution to the acquisition of marital assets, an inquiry into the relative contributions of the parties is required:

> "[T]he court first must determine the magnitude of each spouse's overall contribution to the acquisition of marital assets from evidence in the record. If one spouse is a homemaker, that determination necessarily will include an assessment of the homemaker spouse's contribution to the enterprise of homemaking. A homemaker spouse's overall contribution may consist of a combination of domestic contributions and economic or other nondomestic contributions.

---

[7] ORS 107.105(1) provides, in part:

"Whenever the court grants a decree of marital annulment, dissolution or separation, it has power further to decree as follows:

"* * * * *

"(f) For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. * * * The court shall consider the contribution of a spouse as a homemaker as a contribution to the acquisition of marital assets. There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held."

[8] "Property" is something that "may be owned or possessed, and rights of possession, use and enjoyment attach to it." *Massee*, 328 Or at 206.

"Once the court has determined each spouse's overall contribution to the acquisition of marital assets, the court compares the respective contribution of the spouses. The ultimate question is whether the spouse seeking to rebut the presumption of equal contribution has proved, by a preponderance of the evidence, that the other spouse did not contribute equally to the acquisition of marital assets." *Id.* (footnote omitted).

We consider all admissible probative evidence of each spouse's *"overall contribution,"* OEC 308, and then compare their contributions to determine if they were equal. We look at both economic and noneconomic contributions.

◼ Here, throughout the marriage, both parties worked full time in the chiropractic business. While the business was a sole proprietorship, the parties received a single, undifferentiated "draw" against business income instead of salaries. When the business was a corporation, husband continued to work full time without receiving direct income for his contribution to the business, but instead drew social security income benefits. Wife also continued to work full time, and was then paid a salary for her continued contribution to the business.

Throughout the marriage, both parties contributed indirectly to the acquisition of the marital assets and, in fact, lived a frugal lifestyle that allowed the accumulation of a "nest egg" for their retirement. Wife provided all of the traditional "homemaker" functions, worked in the business without demanding a salary for those services, and helped with the maintenance, repair and improvement of the real properties. Similarly, husband worked full time without a salary while he collected social security benefits, helped with the maintenance, repair and improvement of the real properties, and managed the parties' finances.

In sum, both parties made significant economic and noneconomic contributions to the acquisition of marital assets. Wife's contribution to the chiropractic business, the parties' principal reliance on wife's salary while husband collected social security benefits, and wife's willingness to accept a frugal lifestyle, not only permitted retention of the assets husband brought to the marriage, but, as pertinent

here, contributed to the accumulation of appreciation and income those assets generated during the marriage. There is no measurable difference in "kind" or "magnitude" between husband's contribution to the acquisition of the separately held marital assets at issue here and wife's contribution to the acquisition of those assets. *See Massee,* 328 Or at 207. We conclude that husband has failed to overcome the presumption of equal contribution. Consequently, the trial court erred in failing to include the marital assets held in the five Waterhouse accounts.

We turn to husband's cross-appeal. He assigns two errors to the property distribution, only one of which requires discussion.[9] In his second assignment, husband argues that the court erred in awarding wife an equalizing judgment for half the rental income earned during marriage from his premarital commercial property, because he rebutted the presumption of equal contribution. Husband is wrong. As noted, wife contributed equally to the acquisition of those assets. *See* 159 Or App at 202. Nonetheless, our determination that wife is entitled to one half of the value of the Waterhouse accounts necessitates that we delete the award of the rental income from the property distribution. Otherwise, wife would receive a double recovery—*i.e.,* the value of the accounts as well as the value of some of the income placed in the accounts.

Our disposition of the appeal and cross-appeal requires modification of the property division so as to divide the marital assets equally, including the value of the five Waterhouse accounts, after giving the parties a credit for the value of the assets each brought to the marriage. That determination requires that the equalizing judgment awarded to wife by the trial court must be increased by

---

[9] Husband's first assignment of error asserts that the trial court erred in equally dividing the office equipment that husband acquired before the marriage. We cannot say that that division was not "just and proper," particularly since husband has been fully credited for the value of all property he brought to the marriage.

$152,132.55, for a total equalizing judgment to wife in the amount of $336,005.50.[10]

On appeal and cross-appeal, judgment modified to award wife an equalizing judgment in the amount of $336,005.50, with interest thereon at the statutory rate from

---

[10] The amount of the equalizing judgment is based on the following calculation:

| | | |
|---|---|---|
| **Total Assets subject to division:** | | **$1,163,573.00** |
| Credit to husband for premarital assets | | |
| Value of property Husband brought to marriage | $311,000 | |
| Less Wife's property brought to Marriage | ( 20,000) | |
| Less value of cabin at time of marriage | ( 40,000) | |
| t value of Husband's premarital assets | | - $251,000.00 |
| **Gross Value of Marital Assets Subject to Equal Division** | | $912,573.00 |
| | | |
| **Gross Assets to Husband** | | **$1,043,292.00** |
| **Less equalizing Judgment** | | **(336,005.50)** |
| **Net Assets to Husband** | | **$707,286.50** |
| Value of Undivided Assets to Husband | $956,407.00 | |
| Commercial property | $125,000.00 | |
| La Grande House | $109,500.00 | |
| Adjoining lot | $ 54,500.00 | |
| 30.11 acres on Wallowa Lk | $ 21,250.00 | |
| Cabin and 19 acres | $ 75,000.00 | |
| Waterhouse acct 00-1-6 | $254,606.00 | |
| Waterhouse acct 47-1-4 | $310,039.00 | |
| Waterhouse acct 05-1-1 | $ 6,512.00 | |
| Value of Divided Marital Assets to Husband: | $86,885.00 | |
| Half the antique car collection | $ 49,875.00 | |
| Half the household items | $ 3,432.50 | |
| Half the Smith-Barney acct | $ 29,222.50 | |
| Half the Loan Receivable | $ 3,000.00 | |
| Half the office equipment | $ 1,355.00 | |
| Equalizing Judgment to Wife: | ($336,005.50) | |
| **Gross Assets to Wife** | | **$120,281.00** |
| **Plus Equalizing Judgment** | | **$336.005.50** |
| **Net Assets to Wife** | | **$456,286.50** |
| **Value of Undivided Assets to Wife** | $33,396.00 | |
| Waterhouse SEP | $ 19,905.00 | |
| Waterhouse IRS | $ 13,491.00 | |
| **Value of Divided Marital Assets to Wife:** | $86,885.00 | |
| Half the antique car collection | $ 49,875.00 | |
| Half the household items | $ 3,432.50 | |
| Half the Smith-Barney acct | $ 29,222.50 | |
| Half the Loan Receivable | $ 3,000.00 | |
| Half the office equipment | $ 1,355.00 | |
| **Equalizing Judgment to Wife:** | $336,005.50 | |
| Half Apprec in real property | $ 52,000.00 | |
| Half value of the cabin | $ 37,500.00 | |
| Difference between husband's award less $251,000 | $246,505.50 | |

the date of the original judgment payable in three equal annual installments beginning with entry of the amended judgment and payable annually thereafter. Costs, not including attorney fees, to wife.