Argued and submitted October 9, 1998, judgment modified in part; otherwise
affirmed February 9, 2000

In the Matter of the Marriage of

Kyra Pauline WARD,
*Respondent,*
*and*

Joseph Liam WARD,
*Appellant.*

(96-DO1643DS; CA A98915)

998 P2d 691

George W. Kelly argued the cause and filed the briefs for
appellant.

Charles S. Spinner argued the cause for respondent. With
him on the brief was Spinner & Schrank.

Before Edmonds, Presiding Judge, and Armstrong and
Kistler,* Judges.

---

* Kistler, J., *vice* Warren, P. J., retired.

ARMSTRONG, J.

## ARMSTRONG, J.

■     Husband appeals from a dissolution judgment and raises two objections to it. First, he contends that he contributed much more than wife did to the acquisition of the parties' marital assets and, thus, that he should receive a greater share of those assets than she does. Second, he contends that the court erred in determining the value of some of the assets and, hence, erred in making the property division that it did. On *de novo* review, we modify the judgment to reflect our decision on the value of the parties' assets but otherwise affirm the trial court.

The parties began living together in 1990, married in 1992 and divorced in 1997. Husband owned several rental properties at the time that the parties married; wife had approximately $9,000 in cash. The parties opened their own real estate business, Gateway Realty, when they married and operated the business jointly. They also had a separate rental business, begun with husband's rental properties, and for which they purchased four additional properties over the course of the marriage. The parties had three checking accounts. One account was used for the rental business and bore only husband's name. The other accounts bore both names and were used for the Gateway Realty business and for the parties' household and general living expenses, respectively. Funds from all of the accounts frequently were commingled.

The parties maintained one home during the marriage. Although there is conflicting testimony about who did the domestic work necessary to maintain the home, we accept wife's contention that she did most of that work. For various periods during the marriage, husband's two children from an earlier relationship also lived with the parties.

■     Husband first assigns error to the trial court's decision to divide the parties' marital property equally. He makes alternative arguments on the issue. He suggests that the parties' circumstances are such that it would be just and equitable to return them to their premarital financial positions. We have done that in some short-term marriages in which the parties have kept their respective assets segregated. *See, e.g.,*

*York and York*, 30 Or App 937, 569 P2d 32 (1977). However, even when those conditions are met, it does not follow that that would be the appropriate disposition. As the Supreme Court recently emphasized in *Massee and Massee*, 328 Or 195, 209-10, 970 P2d 1203 (1999), ORS 107.105(1)(f) controls the division of marital property on dissolution, which means that

> "[i]t is not proper for [a] court to focus solely on either the duration of a marriage or the extent to which the parties commingle[d] their financial affairs when [the court divides the parties'] property."

*Id.* at 210. Here, the parties have commingled their financial affairs to a degree that would make it inappropriate to attempt to return them to their premarital financial positions.

Husband also contends that he rebutted the statutory presumption in ORS 107.105(1)(f) that the parties contributed equally to the acquisition of their marital assets. He claims that he came into the marriage with greater assets, that during the marriage he worked more hours and earned more money, and that he maintained the rental business "without notable help from wife." Husband states that he "was carrying enormously more than half the load" and that "wife [was] somewhat lackadaisical about her work efforts." Thus, husband claims, there was not an equal contribution toward the acquisition of marital assets and he should be awarded a share of those assets that reflects his greater contribution to their acquisition.

We disagree with husband's assessment of the evidence. The record shows that wife contributed to both the acquisition of property during the marriage and to the appreciation of the property that husband brought to the marriage. Wife worked full time in the couple's realty business, paying her commissions into their joint accounts. Although husband argues that wife did not participate in many real estate sales, the evidence suggests, and the trial court found, that some of wife's commissions were listed under husband's name because he was entitled to a higher percentage of the commission proceeds. Wife also directly contributed to the rental business by performing tasks such as showing the properties

and delivering notices to tenants. Additionally, with husband's support, wife expended considerable efforts trying to launch a career as a watercolor painter. Because that enterprise was also potentially lucrative, her efforts in that regard should be included as part of her contribution. Finally, wife also contributed on the homemaking front, performing household chores, cooking and doing laundry. We have stated that the statutory presumption of equal contribution is strengthened when "a spouse not only does the homemaking but also contributes his or her salary to the marital estate." *Olinger and Olinger*, 75 Or App 351, 355, 707 P2d 64, *rev den* 300 Or 367 (1985).

Husband's arguments that he made greater efforts are not persuasive. The record suggests that both parties made considerable contributions of roughly equal proportion. Husband may have worked more overtime hours selling real estate and improving the rental properties, but wife put in additional time homemaking and cultivating her career as a painter. On the record before us, we are not persuaded that husband rebutted the statutory presumption that wife contributed equally to the acquisition of marital assets. The parties are entitled to an equal share of those assets. We turn now to husband's second area of objection, which involves errors in the computation of the value of certain of the properties. In the interest of clarity, we will address each property separately. Husband first argues that the trial court erred in its decision on the value of the Highway 58 property, a post-relationship acquisition. The trial court determined the equity in that property to be $35,109. Husband claims that the equity should be $37,109. Husband also argues that the trial court neglected to subtract property taxes of $4,967, which would reduce the value to $32,142. Both parties figure the current market value of the property to be $85,000. Both sides compute the current debt on the property to be $33,847 and the property taxes to be $4,967. Husband then goes on to figure the current equity to be $37,109 before subtracting the taxes. He arrives at that figure by subtracting such things as a property management fee. Husband is not entitled to receive credit for those types of services related to the property. We determine the equity to be $46,186, which is the current market value minus the debt and taxes, all jointly agreed upon figures.

Husband next contests the value of the Mill Street property. That property was purchased by husband in 1988 and sold in 1997. Husband argues that the trial court erred in neglecting to subtract the pre-relationship equity of $26,359. Wife concedes that the trial court erred in that fashion. However, wife is also correct to point out that the trial court erred in not apportioning the pre-relationship capital gains tax to the husband. The court subtracted the $18,500 capital gains tax from the sale price. If husband is to receive credit for his pre-relationship equity, then it is only fair that the tax liability be apportioned between the pre- and post-relationship gain. Therefore, we calculate the correct value for the property to be $21,595 and not $39,500, as the trial court found.

Husband next argues that the court erred in its decision on the value of the C Street property. That property had already been sold at the time of trial. The trial court put the value of the sale at zero because, although the property sold for $28,000, there was $10,700 owed in capital gains taxes and the remaining $17,330 was spent on "joint marital obligations." Husband argues that the entire $28,000 was spent on family debt and that he still retains a $10,700 tax obligation. Therefore, husband claims, he should be credited with a $10,700 debt for this property. The trial court stated specifically that

> "[t]he C Street was twenty-eight thousand *minus the tax liability of ten thousand seven hundred* but because he paid joint family marital obligations which were federal and state taxes there is no proceeds left and so I won't add or subtract that from either side."

(Emphasis added.) Clearly, the trial court did take the capital gains tax of $10,700 into account in its computation of value. We therefore agree with the trial court as to the value of the property.

Husband last disputes the value of the Elk Creek property. The trial court found the equity in the property to be $27,363. Husband argues that the correct figure should be $22,951, because that is the amount that husband claims that he is owed under a sales contract with a buyer who is acquiring the property pursuant to a lease. Husband cites his motion for a new trial as the source for that figure. However, no evidence supporting that figure is properly before us

because it was not presented at trial. Husband next argues that the trial court failed to account for his pre-relationship equity of $16,190. To determine the value of the property, we rely on figures provided by husband in his UTCR statement and trial memorandum.[1] In that document, the equity for the property is listed as $43,553. The pre-relationship equity is listed as $16,190. Subtracting the pre-relationship equity from the current equity leaves a figure of $27,363, which is the value that the trial court found. We agree with that value.

In reviewing the remainder of the property values, we have found and will correct one clerical error regarding the B Avenue property. The trial court valued that property at $74,067. However, we compute the correct figure to be $75,898, based on an equity of $81,267 less taxes of $5,369.

In summary, we find the net assets to have been understated by $12,908, based on an error of $1,831 on the B Avenue property and an error of $11,077 on the Highway 58 property. The net assets were also overstated by a $17,905 error on the Mill Street property. Hence, the net value of the properties awarded to husband should be reduced by $4,997 and the equalizing judgment awarded to wife should be reduced accordingly.

Judgment modified to reduce wife's equalizing judgment to $119,310; otherwise affirmed.

---

[1] We were unable to find any figures from wife for this property in the record.