Argued and submitted October 3, remanded with instructions in part; otherwise
affirmed December 24, 1997

In the Matter of the Marriage of

Rita TROFFO,
*Appellant - Cross-Respondent,*
*and*

John TROFFO,
*Respondent - Cross-Appellant.*

(95DO1204DS; CA A94487)

951 P2d 197

George W. Kelly argued the cause and filed the brief for appellant - cross-respondent.

James C. Farrell argued the cause and filed the brief for respondent - cross-appellant.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

**EDMONDS, J.**

Wife appeals from a judgment of dissolution of marriage. ORS 107.105. She argues that the trial court's property division in the judgment is inequitable. Husband cross-appeals, arguing that the trial court erred in not awarding him one-half of the gains in assets during the marriage. We review *de novo*, ORS 19.125(3), and modify the judgment to provide for an equal distribution of the marital assets.

■    At the time of the dissolution, husband was 57 and wife was 36 years old. Husband met wife in 1982. The parties were married in 1988 and separated in 1994. In 1984, husband bought a house in San Jose, California, and wife moved into the house approximately three to six months later. Husband made the down payment and all the monthly payments, taxes, insurance and utilities on the house. After the parties moved into the San Jose house, they began extensive remodeling projects. According to wife, she did not pay any rent during the time that she lived in the San Jose house. However, she testified that she contributed money to the remodeling cost and her personal labor to the projects, including the supervision of the contractors and the wallpapering and painting of some of the rooms. Husband testified that wife paid rent during the time that they cohabited before they were married. However, husband's income tax statements do not reflect that he received rent from wife during that time, and he concedes that he applied her monetary contributions toward the cost of remodeling.

Before the parties were married, they did not have any joint bank accounts; however, they purchased furniture and a car together and held title jointly. The assets in husband's name at the time of marriage were as follows: (1) equity in San Jose house, $90,000; (2) USAA Annuity, $10,000; (3) Litton stock, $8,320; (4) Individual Retirement Accounts (IRAs) and money market accounts, $18,175; (5) Pentagon Federal Credit Union account, $3,640; (6) Dreyfus account, $16,520; (7) Ditigal stock, $10,000; and (8) motorcycle, $5,000. Wife had a checking account that was worth approximately $2,000.

After the parties were married, they continued to remodel the San Jose house. They opened a joint checking account, and wife's name was added to husband's Pentagon Federal Credit Union account. Approximately eight months after the parties were married, they sold the house in San Jose and purchased what the parties refer to as the Half Moon Bay house for $500,289. When the house in San Jose was sold, the equity realized from the sale was approximately $134,000. Approximately $90,000 of that money was applied to the purchase of the Half Moon Bay house, and the rest of the money went into investments and savings. The record title to Half Moon Bay property was in both husband's and wife's name.

During the marriage, both husband and wife worked. Husband earned approximately $125,000, and wife earned approximately $25,000 per year. Wife received two paychecks each month. She gave husband one paycheck to apply to the mortgage payments or to put into their savings account and expended her other check on groceries and other expenses for the household. Wife also made nonmonetary contributions to the household. Those contributions included the cooking, cleaning, grocery shopping, laundry and gardening work and acting as the hostess for husband's business parties held at the residence.

In 1992, wife concluded that the parties' monies were not being invested wisely, and she made an appointment with a financial advisor. Together, the parties met with the counselor, who advised them to invest in a mutual fund investment company. Husband and wife then opened an account with the mutual fund company in husband's name. The account included the purchase of a life insurance policy with wife as the owner. Also, wife acquired an IRA in her name.

In 1993, the parties sold the Half Moon Bay property for $488,000 and purchased the Tyee property for $215,000. They used $48,600 of the equity from the Half Moon Bay house as the down payment for the Tyee house. The Tyee property was held jointly. After the parties separated in late 1994, wife bought a condominium, using $13,000 that she

had recovered in a personal injury action and the cash value from the life insurance policy.

As of October 1994,[1] the parties' assets and their value were as follows:

| | |
|---|---:|
| IDS Mutual Fund Accounts | $155,634 |
| Dreyfus Account | $ 27,925 |
| Pentagon Federal Credit Union Account | $ 2,129 |
| First Interstate Bank checking account | $ 1,076 |
| Tyee House, less the debt and sales costs | $ 37,000 |
| Wife's IRA account | $ 5,333 |
| GB Federal Credit Union account | $ 1,777 |
| South Umpqua State Bank account | $ 3,517 |
| Charles Schwab account | $ 1,407 |
| 350 shares of Kelly Services stock | $ 9,632 |
| IDS, cash value of life insurance | $ 1,567 |
| Condominium equity | $ 25,000 |
| Total | $271,997 |

After trial, the trial court awarded the IDS mutual fund account, the Dreyfus account, the Pentagon Federal Credit Union account, the First Interstate Bank Checking account, and the Tyee house to husband. The remainder of the above property was awarded to wife along with an "equalizing" judgment of $15,544. According to wife, the trial court's decision results in an award to husband of all of the assets that he brought into the marriage and "the bulk of the assets acquired during the marriage." On appeal, she argues that, because she made substantial contributions to the San Jose property during the four years preceding the marriage, she is entitled to credit for those contributions. She also contends that she is entitled to one-half of the assets accumulated during the marriage and one-half of the appreciation during the marriage of the assets that husband brought into the marriage.

Husband responds:

"The Trial Court did not err in [not] awarding Wife * * * credit for any gain in Husband's assets acquired before marriage because the parties did not commingle their

---

[1] At trial, the parties stipulated that all assets would be valued as of that date.

assets prior to marriage. If the Trial Court erred, it was in not awarding Husband one-half of the gain [that] the parties realized during the marriage. The net effect of the Trial Court's decision was to award Wife some sixteen times the value of [the] assets gained during the marriage as it awarded Husband."

According to husband's calculations, husband was awarded assets in the amount of $207,408, and wife was awarded, including the offsetting judgment, $63,376 in assets as a result of the dissolution judgment. However, he contends that the disparity is equitable because wife gained assets from the marriage in the amount of $58,376 and husband's gain was only $3,625.

ORS 107.105 provides, in part:

"(1)   Whenever the court grants a decree of marital annulment, dissolution or separation, it has power further to decree as follows:

"* * * * *

"(f)   For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. * * * The court shall consider the contribution of a spouse as a homemaker as a contribution to the acquisition of marital assets. There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held."

■ ■   The phrase "marital assets" in ORS 107.105 describes any real or personal property, or both, acquired by either of the spouses, or both, during the marriage. *Stice and Stice*, 308 Or 316, 325, 779 P2d 1020 (1989). In determining the value of marital assets, we consider the entire length of the parties' relationship and not simply the time during which they were legally married, so long as during that period of time there was mutual involvement, commingling and interdependence of finances. *Kampmann and Kampmann*, 108 Or App 407, 410, 816 P2d 642, *modified on other grounds* 110 Or App 100 (1991).

■ ■   With the exception of the Dreyfus account and the Pentagon Federal Credit Union account, none of the above

assets was owned by either of the parties before their relationship began. In addition, husband added wife's name to the Pentagon Federal Credit Union account shortly after the parties were married. Because that account was held jointly and received contributions from both parties during marriage, it is a marital asset. The only account that husband maintained as a separate account and that never became a marital asset because of a lack of commingling was the Dreyfus account. In addition, we are persuaded by the evidence that, from the time that the parties began cohabiting, they jointly commingled their finances and invested their individual efforts into the maintenance of their household as well as the improvement of the San Jose property. In the light of that evidence, we conclude that it is appropriate to include the period of their cohabitation before marriage in the determination of what are the marital assets of the parties and their value.

■　　　Nonetheless, husband contends that, because he came into the marriage with more assets than wife, he should receive an award equivalent to what he brought into the marriage and that wife is entitled to only one-half of the appreciation of the assets during the marriage. He points, in part, to the fact that much of the money that was in the parties's various accounts at the time of separation had their origin in monies that were in his investment accounts before he began cohabiting with wife. Essentially, the trial court agreed with his position. We conclude that husband's argument is not well taken. In *Day and Day*, 137 Or App 264, 269, 904 P2d 171 (1995), *rev den* 322 Or 598 (1996), we held that

> "[i]n determining whether the presumption [of equal contribution under ORS 107.105] has been overcome with respect to a particular asset, we may consider that the source of funds used to acquire the asset belonged to one spouse, *if those funds remain segregated.* * * * Unsegregated funds will not be traced to their ultimate source, however, unless there is a compelling reason to do so." (Citations omitted; emphasis supplied.)

In light of the manner in which the parties have commingled their income during their cohabitation and marriage and wife's nonmonetary contributions to the household during that time, husband does not provide any compelling reason to

trace the parties' assets to their origin other than in regard to the Drefyus account. We conclude that husband has not rebutted the statutory presumption of equal contribution under the circumstances. Wife is entitled to an equal share of all assets with the exception of the amount of the Dreyfus account that was brought into the marriage.

■    Although the Dreyfus account is not a marital asset, its appreciation is a marital asset. In *Massee and Massee*, 138 Or App 589, 596, 911 P2d 320, *rev allowed* 323 Or 483 (1996), we held that the appreciation during marriage of an asset acquired before marriage constituted marital property for purposes of ORS 107.105(1)(f). We explained:

> "[A]ppreciation is property and, to the extent that it occurs during marriage, it is acquired during the marriage. Accordingly, it is subject to the presumption of equal contribution, regardless of who brought the property into the marriage." *Id.*

Husband's Dreyfus account appreciated from $16,520 before the marriage to $27,925 at the time of the separation. Thus, wife is entitled to one-half of that appreciation.

In light of the above considerations, the trial court's award of an offsetting judgment in the amount of $15,544 was error. When the marital assets are divided equally to reflect the above rulings, wife is entitled to an offsetting judgment in the amount of $79, 506.[2] Accordingly, we vacate the trial court's offsetting judgment, but otherwise affirm the provisions of judgment. On remand, the trial court is to enter an offsetting judgment in favor of wife in the amount of $79,506. Because of our holdings regarding wife's appeal, husband's cross-appeal is without merit.

Remanded with instructions to vacate the judgment in favor of wife for $15,544 and to enter judgment in favor of wife for $79,506 with interest thereon at the statutory rate from the date of the original judgment, payable in three equal

---

[2] Excluding the amount of the Dreyfus account that husband brought into the marriage, the value of the marital assets, including the appreciation on the Dreyfus account at the time of separation, is $255,477. Wife received an award from the trial court of marital assets in the value of $48,233.

annual installments, beginning with entry of amended judgment; otherwise affirmed. Affirmed on cross-appeal. Costs to wife.