Argued and submitted December 7, 1998, judgment modified in part and otherwise affirmed on appeal; affirmed on cross-appeal April 7, 1999

## In the Matter of the Marriage of

Ronnie Gene LONG,
*Appellant - Cross-Respondent,*

*and*

Cynthia Marie LONG,
*Respondent - Cross-Appellant.*

(9606-65946; CA A99248)

978 P2d 410

Robert P. Johnson argued the cause and filed the briefs for appellant - cross-respondent.

Mark A. Johnson argued the cause for respondent - cross-appellant. With him on the briefs was Findling & Johnson LLP.

Before Edmonds, Presiding Judge, and Deits, Chief Judge,* and Armstrong, Judge.

EDMONDS, P. J.

---

* Deits, C. J., *vice* Warren, P. J., retired.

**EDMONDS, P. J.**

Husband appeals from a judgment of dissolution of marriage under ORS 107.105, challenging the trial court's division of property. Wife cross-appeals, claiming spousal support. We review *de novo*, ORS 19.415(3), and modify the judgment on appeal. On cross-appeal, we affirm.

At the time of trial, husband was 53 years old and wife was 43 years old. The parties had been married to each other from 1981 until 1987, when their marriage was dissolved. Wife received a financial settlement from that dissolution. Nonetheless, the parties continued their relationship, cohabitating at times from 1987 until August 1994 and until husband married Carolyn Spears. Husband and Spears dissolved their marriage in November 1994. At that time, the parties resumed residing together and eventually remarried in May 1995. A year later, they separated, and husband sought a dissolution. Husband's child from a prior marriage lived with the parties at times, but there are no children from their relationship.

At the end of the trial, the trial court made the following rulings:

> "First I'm going to order that each of the parties retain any of the personal property presently in their possession * * *.
>
> "* * * * *
>
> "Third, I do not find this to be a case where spousal support is justified. I don't find any lost employment opportunities, I don't find anybody who doesn't have their own separate career or method of earning income. I recognize that [wife's] expenses exceed her income, but I don't believe, in light of all of the circumstances, spousal support is appropriate.
>
> "In terms of the assets and liabilities, [I] basically provide that each of the parties receive any of the vehicles in their — presently in their possession. [Wife] is to receive the condominium. Each of the parties shall be responsible for their separate individual debt and [husband] is to receive the property in his name with the exception of the contract and the real property that sits under Ron's No

Place [Tavern] and that both of those assets be awarded to [wife].

"There are lots of different ways that I can sit here and try to figure out what money's worth, what — what increase there has been in the marital estate since 1994 to date, what credit I should give [wife] for time prior to that or not give her for time prior to that. Quite frankly, and some of those areas I wouldn't have sufficient evidence in front of me at this point to make those calculations. I think the parties recognize that. And that, all taken into account is why I believe that that is an equitable distribution and that I'm also — in light of that distribution is one of the factors I've considered in making the determination that spousal support isn't appropriate because I recognize there's an ongoing account receivable."

Husband assigns error to the trial court's award to wife of the contract and real property known as "Ron's No Place Tavern." The parties agree that this asset was purchased by Husband in 1965, that he held sole title to the asset until he sold it on contract in 1993 and that the property and contract are valued at $250,000. Wife argues that the award was correct but that, if we modify the property division, spousal support would be appropriate.

■     The threshold issue in this case is what time period of husband and wife's relationship is relevant to the determination of a proper property division under ORS 107.105(1)(f). Husband argues that the longest period of time that we should consider is 18 months (from November 1994 through May 1996). Wife argues that we should either consider the time from their first marriage to their separation in 1996 (15 years), or from December 1987 (8 and one-half years). We turn to ORS 107.105 to resolve that issue.

ORS 107.105 provides, in part:

"(1)   Whenever the court grants a decree of marital annulment, dissolution or separation, it has power further to decree as follows:

"* * * * *

"(f)   For the division or other disposition between the parties of the real or personal property, or both, of either or

both of the parties as may be just and proper in all the circumstances. A retirement plan or pension or an interest therein shall be considered as property. The court shall consider the contribution of a spouse as a homemaker as a contribution to the acquisition of marital assets. There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held."

In determining the value of marital assets[1] in some cases, we have considered the entire length of the parties' relationship including a period of cohabitation preceding the marriage. *See, e.g., Troffo and Troffo*, 151 Or App 741, 951 P2d 197 (1997) (four-year cohabitation preceding six-year marriage); *Burton and Burton*, 92 Or App 287, 758 P2d 394 (1988) (total of eight years including a period of unmarried cohabitation); *Caverly and Caverly*, 65 Or App 98, 670 P2d 199, *rev den* 296 Or 236 (1983) (three-year cohabitation preceding seven and one-half years of marriage). However, none of those cases involved an intervening marriage. As a matter of law, the legal efficacy of the intervening marriage defeats any claim of wife that the relevant period of cohabitation began in 1981 or 1987; otherwise, husband's marriage to Spears would have no legal effect under the statute. Therefore, for purposes of evaluating what is a "marital asset" we consider what property was acquired between November 1994 and the parties' separation in May 1996 and whether an appreciation of the parties' separately held assets became marital assets during that same period.

The only property, real or personal, acquired during the relevant period was a Ford truck purchased in April 1995.[2] It was undisputed at trial that the resale value of the truck equaled the amount of debt owed. In addition, as the trial court said, wife did not introduce evidence about any

---

[1] " 'Marital assets' include all the 'real or personal property, or both, acquired by either of the spouses, or both, during the marriage.' ORS 107.105(1)(f); *Stice and Stice*, 308 Or 316, 325, 779 P2d 1020 (1989); *Pierson [and Pierson]*, 294 Or [117, 121-22, 653 P2d 1258 (1982)]. 'Marital assets' do not include assets brought into the marriage by either spouse, nor do they include assets acquired after dissolution of the marriage. *Id.* at 121." *Massee and Massee*, 328 Or 195, 201 n 2, 970 P2d 1203 (1999).

[2] Wife introduced evidence of the purchase of several used vehicles, but the evidence is that neither party held title to those vehicles at the time of separation.

appreciation in husband's separately held real and personal property during that time.[3] Although there was evidence pertaining to the values at purchase and at time of trial as well as the annual income from husband's various business interests, that evidence does not address the issue of appreciation during the relevant period.

Even when there is an absence of evidence of any marital asset that triggers the presumption of equal contribution, ORS 107.105(1)(f) authorizes an award of separate property if the award would be "just and proper in all the circumstances." The marital property subject to division by the court includes the real and personal property of husband acquired before marriage. In this case, the trial court awarded wife property that husband purchased 31 years before the marriage and that is valued at $250,000. Other than that property, the trial court left the parties with the property and liabilities that they brought into the second marriage.

██ We turn to the financial circumstance of the parties during their marriage. Wife has never been a party to any of husband's business contracts. The parties maintained separate bank accounts during the marriage. Husband testified that he provided wife with $600 a month for spending money, and wife introduced evidence that she made occasional payments to shared household expenses. Beyond that, there is a paucity of evidence that either party made any significant contribution, monetarily or otherwise, to the other party's assets during the 18-month marriage. When there has been no commingling of financial needs or affairs, it is just and proper that the parties be restored as much as possible to their premarital financial situation. *See Jenks and Jenks*, 294 Or 236, 242, 656 P2d 286 (1982).[4] We conclude that the trial court erred in awarding "Ron's No Place Tavern" to wife.

---

[3] During summation, wife's counsel explained to the trial court that wife "has asked for an award of property and I think you understood listening to my presentation of witnesses that I wasn't focused on what [husband's] assets are necessarily worth. She didn't have the money to put it together. There is value there. I requested that you make findings as to those values and I know you're capable of doing it."

[4] In *Massee*, the court cautioned that it would be improper "to focus solely on either the duration of the marriage or the extent to which the parties commingle their financial affairs" when dividing marital property held by the parties before

■■   We turn to wife's argument on cross-appeal that she is entitled to spousal support in the event that the property division is modified. ORS 107.105(1)(d) governs the determination of spousal support in a dissolution proceeding, both as to amount and duration.[5] The purpose of a spousal support award is to provide a reasonable amount of income to the recipient spouse that will enable that party to enjoy a standard of living, to the extent practicable, that will not be overly disproportionate to what was enjoyed during the marriage. ORS 107.105(1)(d)(F); *Grove and Grove*, 280 Or 341, 350, 571 P2d 477, *mod* 280 Or 769 (1977).

---

marriage. 328 Or at 210. We understand *Massee* to mean that *all* of ORS 107.105(1)(f) must be applied before determining what is a proper and just division.

[5] ORS 107.105(1)(d) provides, in part:

"For the support of a party, such amount of money for such period of time as it may be just and equitable for the other party to contribute, such contribution to be in gross, in installments or both, as the court may order. The court may approve, ratify and decree voluntary agreements providing for contribution to the support of a party. In making such support order, the court shall consider the following:

"(A)   The length of the marriage;

"(B)   The age and the physical and mental health of the parties;

"(C)   The contribution by one spouse to the education, training and earning power of the other spouse;

"(D)   The earning capacity of each party, including educational background, training, employment skills and work experience;

"(E)   The need for education, training or retraining to enable a party to become employable at suitable work or to enable the party to pursue career objectives to become self-supporting at a standard of living not overly disproportionate to that enjoyed during the marriage to the extent that is possible;

"(F)   The extent to which the present and future earning capacity of a party is impaired due to the party's extended absence from the job market to perform the role of homemaker * * *;

"(G)   The number, ages, health and conditions of dependents of the parties or either of them * * *;

"(H)   The tax liabilities or benefits to each party and the net spendable income available to each party after accounting for such liabilities and benefits * * *;

"(I)   The amount of long-term financial obligation * * *;

"(J)   Costs of health care to a party;

"(K)   The standard of living established during the marriage;

"* * * * *

"(M)   Such other matters as the court shall deem relevant in the particular case in order that each party shall have the opportunity to achieve an economic standard of living not overly disproportionate to that enjoyed during the marriage, to the extent that is possible."

As previously stated, we consider the marriage to be 18 months in length. Both parties are apparently in good health. Wife has been a flight attendant for eight years and has worked the entire time that the parties have known each other. Husband has owned and managed businesses for many years. Although husband is 10 years closer to retirement than wife, only she has retirement accounts. There are no dependents from the parties' relationship, and husband's son from a previous marriage is now an adult. Husband's income combined with available income from his real estate investments is greater than that of wife. According to their affidavits of support, both parties have more expenses than income, but both parties enjoy a comfortable monthly income. In terms of liabilities, husband has considerable tax and credit card debt, and wife has her own substantial mortgage and credit card debt. Husband also owes significant monies on various personal and real property.

Wife argues that she has enjoyed a lifestyle during the marriage made possible only by husband's earnings and that she has become dependent on his income. She has been receiving $1,600 in monthly spousal support, awarded by the trial court during the pendency of the appeal.[6] Husband suggests that, by the time our opinion issues, wife will have received a substantial award of spousal support and that it would be just and equitable to terminate spousal support at that time. We agree. The trial court's award of spousal support provided wife a time for transition from the standard of living to which she had become accustomed, and no further support should be ordered.

On appeal, judgment modified to award husband the interests in Ron's No Place Tavern; otherwise affirmed. Affirmed on cross-appeal.

---

[6] This amount represents the amount of monthly rental and note payable income from Ron's No Place Tavern. The monies have been put into a trust, and wife is receiving spousal support from those monies.