Argued and submitted February 17, judgment of dissolution modified to award wife judgment in amount of $74,343 against husband plus simple interest; interest shall accrue from date of original judgment but shall not be payable until principal balance is due; otherwise affirmed August 11, appellant's petition for reconsideration filed August 12, respondent's response to petition for reconsideration filed August 18, and appellant's reply filed August 24, allowed by opinion October 13, 2004

See 195 Or App 734, 98 P3d 1143 (2004)

## Charlotte E. OWENS-KOENIG,
### *Appellant,*
### *and*
## Patrick Delore KOENIG,
### *Respondent.*
## 0111-73107; A119612
95 P3d 1152

574

Margaret H. Leek Leiberan argued the cause and filed the briefs for appellant.

Warner E. Allen argued the cause for respondent. With him on the brief were Anna S. McCormack and Warren Allen King O'Hara Bennett Jepsen & Diamond, LLP.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

SCHUMAN, J.

## SCHUMAN, J.

Wife appeals from a judgment dissolving the parties' ten-year marriage. She assigns error to the trial court's treatment of three separately held individual retirement accounts (IRAs) and of husband's three pensions. On *de novo* review, ORS 19.415,[1] we modify the trial court's judgment.

The parties were married in 1991. At that time, husband was a union contract negotiator and wife was a homemaker. Her two children from a former marriage were living with the parties. Shortly after the parties married, wife obtained employment in telephone sales. After slightly more than a year at that job, she quit in order to devote her time to rehabilitating residential investment property that the parties jointly bought. By 1995, the parties no longer had the money to continue purchasing homes to fix and resell. However, husband wanted to continue working after his impending retirement, so he and wife opened a printing business in 1996. The enterprise was jointly operated; wife ran the printing presses and husband did most of the customer service and post-printing work.

Husband retired from his union position in April 1997 and began receiving benefits from his three pensions: Western Conference of Teamsters Pension Trust (Teamsters pension), Teamsters Affiliate Pension (Affiliate pension), and Transamerica Life/Teamsters Representative Pension (Transamerica pension). The dispute in this appeal involves

---

[1] The legislature amended ORS 19.415(3) in 2003. Or Laws 2003, ch 576, § 88 ("Upon an appeal from a [*decree*] **judgment** in a **case that constituted a** suit in equity **under common law**, the Court of Appeals shall try the cause anew upon the record." (Additions in boldface; deletions italicized in brackets.)). We need not decide whether the 2003 amendments to ORS 19.415(3) affect our standard of review because those amendments apply only to the appeal of judgments that were entered on or after January 1, 2004. *See* Or Laws 2003, ch 576, § 90a ("The amendments to ORS * * * 19.415 * * * by sections 85 to 89 of this 2003 Act apply only to the appeal of judgments entered on or after the effective date of this 2003 Act. Any appeal of a judgment entered before the effective date of this 2003 Act shall continue to be governed by the law in effect on the day immediately preceding the effective date of this 2003 Act."). Based on the plain meaning of the text of Oregon Laws 2003, chapter 576, section 90a, we apply the 2001 version of ORS 19.415(3) in this case. *But see Kunze and Kunze*, 337 Or 122, 124, 92 P3d 100 (2004) (apparently citing the current version of ORS 19.415(3) in addressing a judgment that was entered before January 1, 2004).

the trial court's division of those pensions as well as several accounts owned by wife and described more fully below.[2]

■ In her first assignment of error, wife disputes the trial court's treatment of a pension account she received pursuant to a qualified domestic relations order (the QDRO account) when her first marriage was dissolved. When she married husband, the QDRO account was worth $51,000. It appreciated during the marriage, and at the time of the dissolution it had an estimated value of $105,000. The trial court treated the $54,000 appreciation as a marital asset and divided it equally between the parties. Wife contends that the entire account, including appreciation, was solely her property and therefore not subject to division. We agree.

■ ORS 107.105(1)(f) distinguishes between marital property, which includes all property owned by either or both parties, and marital assets, a subcategory of marital property that includes only the property acquired during the marriage. *Stice and Stice*, 308 Or 316, 325, 779 P2d 1020 (1989). Property such as wife's QDRO account, acquired before the marriage, is not a marital asset, but, as a general rule, appreciation of property during marriage is. *Massee and Massee*, 328 Or 195, 207, 970 P2d 1203 (1999). As such, it is subject to the so-called presumption of equal contribution, a rebuttable presumption that both parties contributed equally to the acquisition of any marital assets. *Kunze and Kunze*, 337 Or 122, 134, 92 P3d 100 (2004) (citing *Engle and Engle*, 293 Or 207, 214-15, 646 P2d 20 (1982); ORS 107.105(1)(f)). "The presumption of equal contribution to the acquisition of property during the marriage may be overcome by a finding that the property was acquired by one spouse uninfluenced directly or indirectly by the other spouse, *i.e.*, the other spouse has contributed neither economically nor otherwise to the acquisition of the property in issue." *Stice*, 308 Or at 325-26. Typically, the consequence of overcoming the presumption is that the property is not divided between the spouses but is awarded in its entirety to the spouse who owns it, unless the

---

[2] The dissolution judgment also divided other personal and real property and awarded spousal support to wife. Those aspects of the judgment are not in dispute and are relevant to this appeal only insofar as the undisputed value and distribution of the other property affects the modification of the equalizing judgment that we make in light of our holding regarding the accounts and pensions.

court finds that doing so is not "just and proper in all the circumstances." *Kunze*, 337 Or at 135. Here, wife, as the party seeking to rebut the presumption of equal contribution, must prove by a preponderance of the evidence that husband did not contribute, either directly or indirectly, to the appreciation of the QDRO account. *Massee and Massee*, 328 Or at 205.

The parties agree that wife did not add to or take away from her QDRO account during her ten-year marriage to husband and that it was not commingled with any other asset. Thus, she argues, she has overcome the presumption of equal contribution, and the trial court should have treated the entire account, including the appreciation, as her separate property. Husband responds that in several cases— *Massee*, 328 Or 195; *Edwards and Edwards*, 140 Or App 409, 915 P2d 469 (1996); and *Troffo and Troffo*, 151 Or App 741, 951 P2d 197 (1997)—Oregon courts have established that the presumption is not rebutted by showing merely that the asset in question is the passive, noncommingled appreciation of a separately held asset.

Husband is correct insofar as he asserts that passive appreciation of a separately held asset is not, itself, automatically separately held. Such a rule would imply that only a direct, economic contribution to the appreciation can overcome the presumption, while, as noted above, an indirect, noneconomic contribution can (and has) overcome it as well. *Stice*, 308 Or at 325-26. In *Massee*, for example, the parties disputed the distribution of the appreciation of an asset brought into the marriage by the husband and held separately by him. 328 Or at 197. The wife worked primarily as a homemaker during the parties' brief marriage and claimed a right to half of the appreciation of the husband's separately owned asset. *Id.* at 200. The Supreme Court held that the appreciation was a marital asset and that the trial court erred when it failed to assess the homemaker spouse's contribution to the "enterprise of homemaking." *Id.* at 205. The court stated that a "homemaker spouse contributes to the acquisition of marital assets, because the performance of domestic tasks by one spouse frees the other spouse to devote energy and concentration to other tasks that may generate marital assets." *Id.* at 202-03.

In *Edwards,* the parties disputed the trial court's failure to treat the appreciation of two IRAs as marital assets. 140 Or App at 413. The wife had acquired those IRAs before the marriage. We held that the wife had failed to overcome the presumption of equal contribution because, although both parties worked outside of the home and made substantial contributions to household expenses, husband's contributions to housework and child care "were, at times, greater than wife's contributions." *Id.* at 411. In addition, he performed substantial home and auto maintenance. *Id.* at 414; *see also Olinger and Olinger*, 75 Or App 351, 355, 707 P2d 64, *rev den,* 300 Or 367 (1985) (presumption of equal contribution strengthened where a spouse not only contributes salary but also does a majority of housework and half of the yard work).

In *Troffo,* the parties disputed whether the appreciation of an account brought into the marriage by the husband was a marital asset. Although both parties worked outside the home during marriage, the husband earned almost $100,000 more per year than the wife and the wife made significant nonmonetary contributions to the household: "cooking, cleaning, grocery shopping, laundry and gardening work and acting as the hostess for husband's business parties held at the residence." *Troffo,* 151 Or App at 744. We held that the husband did not rebut the presumption of equal contribution and that the wife was entitled to half of the account's appreciation. *Id.* at 748.

■     What *Massee, Edwards,* and *Troffo* have in common is this: One spouse holds assets separately, and the other makes a disproportionately greater nonfinancial contribution to the marital estate through homemaking, child care, or some other form of undercompensated service. In those situations, the courts have held that the presumption of equal contribution is not overcome with respect to the spouse whose contribution is at least partly indirect and nonfinancial. In so holding, the courts have given effect to the legislature's intention in creating the presumption. As the Supreme Court explained in *Engel*, 293 Or at 214, the legislature, in creating the presumption,

"recognized the fact that nonearning spouses who maintain the home, do the cooking and cleaning and raise the children, also contribute to the acquisition of property in a tangible, substantial way. The result was the creation of the rebuttable presumption of an equal contribution."

The purpose of the presumption, in other words, is at least partly to acknowledge and give value to noneconomic or other undercompensated contributions to the marital estate.

Thus, in a different line of cases, the courts have held that the presumption of equal contribution was successfully rebutted with respect to separately held noncommingled assets. In *Johnson and Johnson*, 138 Or App 462, 909 P2d 185 (1996), the wife worked full time outside the home while the husband operated several unsuccessful business endeavors and collected disability. At issue was the division of bearer bonds given to the wife as a gift by her parents during the final ten years of the marriage. *Id*. at 465. We determined that the wife overcame the presumption of equal contribution: The bonds were a gift for the wife alone to do with as she pleased and were kept in the wife's own safe deposit box, segregated from the parties' other assets; there was no evidence that the husband contributed to the marriage as a homemaker or that he made any contributions to the maintenance of the property on which the home was located; and the husband was not "in a position similar to that of most wives after a long term marriage" such that he should receive the protections afforded to the homemaker spouse in *Massee*. *Id*. at 466 (internal quotation marks omitted).

More recently, in *Terhaar and Polance*, 171 Or App 112, 14 P3d 657 (2000), *rev dismissed as improvidently allowed*, 333 Or 596 (2002), the husband's parents had given him stock before the marriage. At issue was the division of that stock and of a retirement account to which the husband made contributions out of a premarital savings account. The husband contended that the wife, who worked outside the home throughout the marriage, was not a homemaker and that there was no evidence that anything she did directly or indirectly affected the passive appreciation of the disputed assets. We agreed. *Id*. at 118. The wife had made no direct contribution, as the husband did not purchase any additional

stock during the marriage, and the only addition to the retirement funds came directly from the husband's premarital savings account. *Id.* at 117. Further, we determined that the wife made no indirect contribution as a homemaker; both parties were employed outside of the home and shared the responsibilities of maintaining the household when not employing the assistance of a paid housekeeper. *Id.* at 118.

More recently still, the court in *Kunze* had to determine whether the wife overcame the presumption of equal contribution with respect to a building she inherited from her aunt. During the marriage, both parties worked outside the home intermittently. 337 Or at 125. They also both worked on improvements to jointly owned real property. *Id.* at 126. The wife, however, "acted as the primary homemaker and caregiver for the parties' daughter." *Id.* at 128. After concluding that the wife overcame the presumption with respect to the property itself because she was "the sole object of her aunt's donative intent," the court went on to hold:

> "In addition, because we agree with [the Court of Appeals'] finding that the [building] had required minimal attention from either of the parties during the marriage, and because husband does not contend that his contributions during the marriage either directly or indirectly affected that property, we further agree with that court's conclusion that wife has overcome the presumption that husband contributed equally to the appreciation of that property during the marriage."

*Id.* at 143. As we had in *Johnson* and *Terhaar*, the Supreme Court held that the presumption was overcome with respect to the spouse who had not contributed a disproportionate share of undercompensated service to the marital estate.

We conclude that the facts in the present case more closely resemble those in *Johnson*, *Terhaar*, and *Kunze* than those in *Massee*, *Edwards*, and *Troffo*. The monies in the QDRO account were not commingled with any of the parties' other assets. Neither spouse made contributions to or withdrawals from the account during the marriage. Neither made investment decisions regarding it. Nor could husband be considered a "homemaker" for the purposes of ORS 107.105(1)(f). He held remunerative employment for the duration of the

marriage; despite his retirement from his union position, he continued to work at the printing business until the parties separated. There is no evidence that husband performed any household or child-rearing duties, let alone a disproportionate share of them. In sum, wife demonstrated that husband did not contribute any undercompensated service to the marital estate that would justify application of the presumption. *See Engle*, 293 Or at 214 (purpose of presumption is to recognize undercompensated service). We therefore conclude that wife rebutted the presumption of equal contribution to the appreciation of the QDRO account.

Further, we conclude that treating the QDRO account's appreciation in value as wife's separate property is "just and equitable." Reviewing the record *de novo*, we do not find any equitable considerations that dictate that the appreciation of the account should be treated as a marital asset. The trial court erred when it treated the appreciation as a marital asset to be divided between the parties.

■■ Wife next assigns error to the trial court's use of the "time rule" to determine the marital asset portion of husband's three pension plans. As we have explained,

> "The 'coverture' or 'time rule' is typically used to calculate the 'marital portion' of benefits under a defined benefit retirement plan. The marital portion is determined by multiplying the benefit to be divided by a fraction, the numerator of which is the years (or months) of service during which the couple were married and the denominator [of which] is the total years (or months) of employment."

*Kiser and Kiser*, 176 Or App 627, 632 n 1, 32 P3d 244 (2001) (citing *Richardson and Richardson*, 307 Or 370, 379, 769 P2d 179 (1989)); *see also Caudill and Caudill,* 139 Or App 479, 483, 912 P2d 915 (1996) ("The Oregon Supreme Court has recognized that the time rule is useful in valuing defined-benefit plans[.]").

■■ Wife first argues that the trial court erred in its determination that husband's pension plans were defined benefit plans (DBP). Under such plans, "a member is entitled to receive certain periodic benefit payments after retirement. The amount of the periodic payments depends upon various factors, which usually include the number of years of service

and the rates of compensation during certain of those years." *Caudill*, 139 Or App at 481. In contrast, a defined contribution plan (DCP) is one "under which benefits derive from the amount of [the employee's] contributions and their earnings." *Kiser*, 176 Or App at 629. Wife concedes that husband's pensions are not DCPs, instead claiming that "pension plans cannot be divided neatly into two distinct categories * * * [and] the variety in both pension plans and parties' circumstances 'are almost infinite' and no 'hard and fast' rule can be applied in all cases." In support of her assertion, she cites *Hester and Hester*, 122 Or App 147, 150, 586 P2d 1048 (1993).

In support of her argument that the plans are not DBPs, wife relies on her own testimony that

> "while [husband] was still working he said that instead of * * * getting raises, that they would put the money into retirement. * * * [Husband] and his boss were the ones that made the decisions. I mean they were like—they were the employer and the employee. They made their own decisions on what went into the retirement."

She argues that by "trading his wages for an increase in the retirement, husband, in effect, was making a contribution to his retirement accounts." Husband, however, testified that he did not make any direct contributions to the pension plans, and his expert, Creveling, testified that all three of husband's pension plans were DBPs. As to the Teamsters pension in particular, Creveling testified:

> "Western Conference of Teamsters is also somewhat dependent on the hourly contribution rate for a period of years, or recently it has been that way. To be honest, how they calculated [the remaining two pensions] I don't know the details. But those are defined benefit plans.
>
> "* * * * *
>
> "The [Teamsters] pension is purely an employer-paid plan."

Husband also introduced into evidence a letter from the Administrative Manager of the Affiliate pension to husband, declaring:

> "In regards to the benefit earned from the [pension] for your divorce hearing, please be informed that one method that is

customarily used in a divorce settlement is the percentage of the number of months married versus the total number of months used in the calculation of the final pension benefits."

The letter then used the time rule to calculate the marital asset portion of that pension. The administrative manager is someone who would have significant knowledge about the characterization of pension plans and their distribution upon dissolution. His reference to the use of the time rule method is strong evidence indicating that the Affiliate plan was a DBP.

We conclude that the court did not err in classifying the pension plans as DBPs. Wife's arguments are not based on any examination of the pension documents themselves but only on her interpretation of husband's description of his employment relationship, something that is not supported by anything other than her own testimony. Even if that testimony were accurate, it would not by itself justify treating the plans as DCPs or as some hybrid without additional evidence regarding the history of husband's contributions. The record contains no such evidence.

Wife then argues that, even if husband's pension plans are DBPs, nothing compels the use of the time rule and that, even if the rule is applied, the application must be "just and proper" in all circumstances. *See* ORS 107.105(1)(f) ("[T]he division or other disposition between the parties of the real or personal property * * * of either or both of the parties [must] be just and proper in all the circumstances."). She argues that the time rule method unfairly and inaccurately minimizes the contributions to the pensions occurring during the marriage. She does not, however, explain why she believes that the time rule method is inequitable nor, more critically, does she propose and justify an alternative "fair and accurate" formula for calculation.[3] Nor are we aware of any. We conclude that the trial court did not err in using the

---

[3] Wife indirectly suggests that the proper method of determining the marital portion of husband's pensions would be to subtract the value of the pensions at the time husband retired from their value at the time the parties were married. However, that method of determining the marital portion of a pension is more properly used when the pension at issue is a DCP, *see Hester*, 122 Or App at 149, and wife concedes that the pensions at issue here are not.

time rule to calculate how much of husband's pensions constituted marital assets. *See Thompson and Thompson*, 103 Or App 458, 461, 797 P2d 1077 (1990) (this court will not disturb the lower court's decision unless convinced that an equitable result has not been reached).

■  In her third assignment of error, wife contests the court's treatment of husband's Bank of America (BOA) IRA. The court concluded that only its increase in value was a marital asset; wife argues that the entire account should have been so designated. We do not agree. The funds in the BOA IRA came from a termination benefit husband received when he cashed in part of his Affiliate pension. The sole name on this account was husband's. However, wife testified at trial that this account was created for the purpose of having the funds necessary jointly to purchase a vehicle for the printing business, and she now argues that, once husband withdrew the money and deposited it into an account to be used for that joint purpose, the entire amount became a marital asset. In support of this argument, she testified that the parties attempted to make the IRA a joint account but were prevented from doing so because the account was a rollover account. She also notes that, at one point, husband made a $2,000 deposit into the BOA IRA from another joint savings account.

Husband argues that wife misstated his intentions for the money and that the funds used to establish the BOA IRA retained a distinct and noncommingled nature. He testified that the discussion about the purchase of a joint vehicle was about a "hypothetical future use of some joint sum of money" and that he decided to roll over the Affiliate pension payout into a retirement account instead of purchasing the vehicle. He states that the joint deposit of $2,000 did not constitute commingling and, in any event, wife was awarded half of that amount as part of the appreciation of the account.

■  To prove that the parties expected to use husband's separate asset for a joint marital purpose, wife needed to demonstrate a mutual understanding between the parties. *Johnson*, 138 Or App at 466. In determining that only the appreciation of the BOA IRA was a marital asset, the court made an implicit credibility determination that husband's

testimony about the absence of a mutual understanding was more believable than wife's testimony about the presence of one. Because the trial court was in a better position to assess the credibility of the witnesses, we defer to its assessment of the witnesses' credibility on that issue. *McCoy and McCoy*, 28 Or App 919, 924, 562 P2d 207, *clarified by* 29 Or App 287, 563 P2d 738 (1977). We therefore conclude that the court did not err in treating as a marital asset only the appreciation in value during the marriage of husband's BOA IRA.

Finally, wife assigns error to the trial court's failure to treat her IRA the same as it treated husband's. Both accounts consisted of separate property to which the parties had made a contribution from a joint account. The trial court treated all of wife's IRA as a marital asset; wife argues that, if we hold that the trial court correctly concluded that only the appreciation in husband's IRA constituted a marital asset, we should hold that, by the same token, only the appreciation in her IRA constituted a marital asset. Husband concedes that the IRAs should be similarly treated, and we accept his consession. The trial court should have considered only the appreciation in wife's IRA as a marital asset.

In sum, we hold that the trial court made several errors requiring modification. First, the trial court erred in treating the appreciation in wife's QDRO as a marital asset. Also, in treating all of wife's IRA ($10,814) as a marital asset instead of treating only the appreciation ($8,114), as it did for husband, the court erroneously attributed an additional $2,700 to wife. Therefore, the court incorrectly valued wife's assets in an amount totaling $56,700. The court's total of wife's assets, including assets that the court correctly valued and those about which the parties agree—$149,314—should have been $92,614. Husband's assets were correctly valued at $241,300. The correct difference between wife's portion of the divided assets and husband's, then, is $148,686. The correct equalizing judgment is $74,343. That yields a just and equitable property distribution.

Judgment of dissolution modified to award wife judgment in amount of $74,343 against husband plus simple interest at rate of nine percent per annum, payable in full on or before January 1, 2006; interest shall accrue from date of

original judgment but shall not be payable until principal balance is due; otherwise affirmed.