Argued and submitted May 10, affirmed June 26, 1996

## SAFEWAY, INC.,
a Maryland corporation,
*Appellant,*

*v.*

## JANE DOES 1 through 50,
and John Does 1 through 50,
*Defendants,*

*and*

## Eric ORMSBY,
individually and on behalf of a class of
all persons who seek to engage in initiative
petitioning at plaintiff's stores,
*Respondent.*

(A9505-03090; CA A89236)

920 P2d 168

Charles F. Hinkle argued the cause for appellant. With him on the brief was Stoel Rives LLP.

Eric Ormsby, respondent *pro se*, waived appearance.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

## EDMONDS, J.

Plaintiff brought this action against defendants seeking a declaration, ORS 28.010 *et seq*, that its Oregon stores are not public forums at which members of the public have the right to engage in initiative petition activities under Article IV, section 1, of the Oregon Constitution, and seeking an injunction prohibiting defendant from entering any property owned by plaintiff for the purpose of gathering signatures for initiative petitions. The trial court granted the requested declaratory and injunctive relief only as to defendant Ormsby (defendant), and only as to one of plaintiff's stores. Plaintiff appeals, arguing that the declaratory relief should have encompassed all of its Oregon stores. On *de novo* review, ORS 19.125(3), we affirm.

Plaintiff operates 91 grocery stores in Oregon. It alleges that defendant entered two of its stores, one located at Southeast 82nd and Burnside in Portland (the "Burnside" store), and one located at 1025 SW Jefferson Street in Portland (the "Jefferson" store), to gather signatures for an initiative petition. At trial, plaintiff produced extensive evidence regarding attempts by various individuals and groups to engage in political, charitable, and other community activities at various Safeway stores in Oregon, customer complaints regarding those activities, its policies prohibiting such activities and the reasons for the policies. Plaintiff also produced evidence that defendant set up a table at the "Burnside" store to gather signatures for initiative petitions. There is no evidence in the record that defendant acted in a similar manner at the "Jefferson" store or at any other of plaintiff's stores in Oregon. The trial court declared that "[the 'Burnside' store] is not a public forum where members of the public have the right to engage in initiative petitioning[.]" It also enjoined defendant until July 31, 1996, "from entering the premises of [the 'Burnside' store] in Portland for the purposes of soliciting persons to sign initiative petitions." Defendant does not appeal from the judgment.

Plaintiff argues that, based on the evidence that it produced at trial, it is entitled to a declaration that *none* of its

stores in Oregon is a public forum where members of the public have the right to engage in initiative petitioning. In *Lloyd Corporation v. Whiffen*, 315 Or 500, 514, 849 P2d 446 (1993), the court held that to prohibit the gathering of signatures on initiative petitions in the common areas of large shopping centers such as the Lloyd Center violated Article IV, section 1, of the Oregon Constitution.[1] Thus, plaintiff asks us to hold that the right to seek signatures for initiative petitions is not implicated at any of its Oregon stores because the stores are not large shopping centers like the Lloyd Center.

■     Assuming without deciding that we are presented with a justiciable controversy with regard to all of plaintiff's Oregon stores, we decline to adjudicate the question presented for another reason. In this case, the factual information necessary for the resolution of the issue is insufficient. *See Oregon Medical Assn. v. Rawls*, 276 Or 1101, 1106, 557 P2d 664 (1976) (holding that the insufficiency of factual data necessary for the resolution of a question presented is a reason for declining to grant declaratory relief). The only evidence we have regarding most of plaintiff's 91 stores concerns

---

[1] Article IV, section 1, provides, in part:

"(1) The legislative power of the state, except for the initiative and referendum powers reserved to the people, is vested in a Legislative Assembly, consisting of a Senate and a House of Representatives.

"(2)(a) The people reserve to themselves the initiative power, which is to propose laws and amendments to the Constitution and enact or reject them at an election independently of the Legislative Assembly.

"(b) An initiative law may be proposed only by a petition signed by a number of qualified voters equal to six percent of the total number of votes cast for all candidates for Governor at the election at which a Governor was elected for a term of four years next preceding the filing of the petition.

"(c) An initiative amendment to the Constitution may be proposed only by a petition signed by a number of qualified voters equal to eight percent of the total number of votes cast for all candidates for Governor at the election at which a Governor was elected for a term of four years next preceding the filing of the petition.

"(d) An initiative petition shall include the full text of the proposed law or amendment to the Constitution. A proposed law or amendment to the Constitution shall embrace one subject only and matters properly connected therewith.

"(e) An initiative petition shall be filed not less than four months before the election at which the proposed law or amendment to the Constitution is to be voted upon."

each store's respective size, that plaintiff sells only grocery-related items and that it has policies prohibiting initiative activities.

■      Whether a right exists under Article IV, section 1, to gather signatures for initiative petitions in the common areas of large privately owned shopping centers open to the public for commercial purposes depends on more than these factors. In cases in which we and the Supreme Court have held that such a right exists, we have considered nonexclusive factors such as the size and configuration of the premises, its relationship to other businesses in the area, whether the premises are bordered by public or private properties, whether the premises are intersected by public streets and sidewalks, whether the premises and adjoining multiple privately owned businesses open directly onto public areas, and whether there are public transportation stops adjacent to the premises. Also pertinent to the inquiry are the scope of business endeavors that are included in the surrounding area and conducted on the premises, the characteristics of the invitation to the public by the businesses in the area, the availability of areas for the public to congregate for noncommercial purposes, the number of people who frequent the premises[2] and the purposes for which the premises and common areas are used. *State v. Dameron,* 316 Or 448, 853 P2d 1285 (1993); *Lloyd Corporation v. Whiffen,* 307 Or 674, 773 P2d 1294 (1989); *Fred Meyer, Inc. v. McDonald,* 112 Or App 321, 828 P2d 1054 (1992), *rev den* 316 Or 382 (1993); *State v. Cargill,* 100 Or App 336, 786 P2d 208 (1990), *aff'd by an equally divided court* 316 Or 492, 851 P2d 1141 (1993). We are unwilling to enlarge the scope of the trial court's declaration based on the record before us.

Affirmed.

---

[2] According to the testimony, the average number of customers per store at plaintiff's Oregon stores is 6,400 to 6,500 customers per week. The average tells us little about the characteristics of a particular store.