Argued and submitted May 24, affirmed July 24, petition for review denied
November 26, 1996 (324 Or 395)

**WABBAN, INC.,**
dba HomeBase,
*Respondent,*

*v.*

**William Eugene BROOKHART,**
**Stop Special Rights P.A.C.,**
**and Oregon Citizens Alliance,**
*Appellants.*

(9406-03905; CA A88416)

921 P2d 409

Ronald H. Elzinga argued the cause for appellants. With him on the briefs was Meyer, Elzinga, Gannett & Stone, P.C.

Thomas M. Christ argued the cause for respondent. With him on the brief were Scott J. Meyer and Mitchell, Lang & Smith.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

## EDMONDS, J.

Defendants appeal from a judgment granting plaintiff declaratory and injunctive relief prohibiting them from using the sidewalks and parking lots in front of two of plaintiff's HomeBase warehouses for the purpose of soliciting signatures for initiative petitions. We review *de novo*, ORS 19.125(3), and affirm.

This case involves two different HomeBase stores owned by plaintiff—one located in the San Raphael Shopping Center in Gresham (the San Raphael store), and the other located at a shopping center in Beaverton (the Beaverton store).[1] Plaintiff alleged claims based on the legal theories of trespass, nuisance and interference with business relations. The trial court did not identify on which claims plaintiff prevailed. We find that plaintiff proved a continuing trespass. The evidence demonstrates that defendants entered plaintiff's property uninvited numerous times and intended to continue their activities unless enjoined. Unless defendants are entitled to be on plaintiff's property for signature gathering purposes pursuant to Article IV, section 1,[2] plaintiff is entitled to an injunction for a continuing trespass.

---

[1] In their first assignment of error, defendants argue that the judgment erroneously applies to *all* of plaintiff's HomeBase warehouses. Plaintiff concedes that the judgment "is not a model of clarity," but that it cannot reasonably be construed as applying to any stores but the San Raphael and Beaverton stores. We agree with plaintiff.

[2] Article IV, section 1, provides:

"(1) The legislative power of the state, except for the initiative and referendum powers reserved to the people, is vested in a Legislative Assembly, consisting of a Senate and a House of Representatives.

"(2)(a) The people reserve to themselves the initiative power, which is to propose laws and amendments to the Constitution and enact or reject them at an election independently of the Legislative Assembly.

"(b) An initiative law may be proposed only by a petition signed by a number of qualified voters equal to six percent of the total number of votes cast for all candidates for Governor at the election at which a Governor was elected for a term of four years next preceding the filing of the petition.

"(c) An initiative amendment to the Constitution may be proposed only by a petition signed by a number of qualified voters equal to eight percent of the total number of votes cast for all candidates for Governor at the election at which a Governor was elected for a term of four years next preceding the filing of the petition.

"(d) An initiative petition shall include the full text of the proposed law or amendment to the Constitution. The proposed law or amendment to the

■    In *Lloyd Corporation v. Whiffen*, 315 Or 500, 514, 849 P2d 446 (1993) (Whiffen II), the court held that "to prohibit the gathering of signatures on initiative petitions in the common areas of large shopping centers such as the Lloyd Center would 'impinge on constitutional rights' conferred on the citizens of this state by the provisions of Article IV, section 1, of the Oregon Constitution." Whether a defendant is engaged in constitutionally protected activity on privately owned property is dependent on the particular circumstances of the property, and the issue necessarily must be decided on a case-by-case basis. *Fred Meyer, Inc. v. McDonald*, 112 Or App 321, 322, 828 P2d 1054 (1992), *rev den* 316 Or 382 (1993).

In this case, both the Beaverton and San Raphael stores are freestanding buildings that cover approximately 103,909 square feet each. Plaintiff is the main tenant in the respective shopping centers, and neither store is connected to any of the other businesses in the shopping centers except that they share parking areas with those businesses. Both stores are retail home improvement businesses that sell lumber, building materials, electrical and plumbing materials, housewares and limited garden and nursery items. Both have hot dog carts located on the sidewalks in front of the store entrances. Once a year, the San Raphael shopping center holds a carnival at the opposite end of the parking lot from the HomeBase store.

Customers must cross parking areas in both shopping centers to travel to individual businesses. The Beaverton store shares its shopping center with an automotive service station and one other building in which a tile business, a car rental business, a dry cleaning business and a spa sales business are located. Included in the San Raphael shopping center are a tile business, a dry cleaning business, four restaurants and two banks. The buildings at both shopping centers are situated so that they surround a common parking

Constitution shall embrace one subject only and matters properly connected therewith.

"(e) An initiative petition shall be filed not less than four months before the election at which the proposed law or amendment to the Constitution is to be voted upon."

area. Thus, to shop at any business at either center, a customer must enter on private property. The San Raphael shopping center is bordered on two sides by public streets and at least one street is four lanes. The shopping center for the Beaverton store is bordered on two sides by public streets.

The question before us is whether these premises, by reason of HomeBase's express or implied invitation to the public, are a forum for assembly by the community. *See Lloyd Corporation v. Whiffen*, 307 Or 674, 773 P2d 1294 (1989) (Whiffen I) (holding that signature gatherers could not be enjoined from gathering signatures at the Lloyd Center because the Center's invitation to the public "was broad and for more than commercial activity"). In *Safeway v. Does 1 thru 50*, 141 Or App 541, 920 P2d 168 (1996), we identified some of the factors that a court should consider in determining the rights of citizens to engage in political activity on other's private property under section 1. We stated:

> "In cases in which we and the Supreme Court have held that such a right exists, we have considered nonexclusive factors such as the size and configuration of the premises, its relationship to other businesses in the area, whether the premises are bordered by public or private properties, whether the premises are intersected by public streets and sidewalks, whether the premises and adjoining multiple privately owned businesses open directly onto public areas, and whether there are public transportation stops adjacent to the premises. Also pertinent to the inquiry are the scope of business endeavors that are included in the surrounding area and conducted on the premises, the characteristics of the invitation to the public by the businesses in the area, the availability of the areas for the public to congregate for noncommercial purposes, the number of people who frequent the premises and purposes for which the premises and common areas are used." *Id*. at 545. (Footnote omitted.)

In summary, the court noted in *Whiffen I* that shopping malls are a part of American life where large numbers of people go. They provide a modern-day substitute for the town square where citizens would congregate for more than just commercial purposes. Employing a similar rationale in *State v. Cargill*, 100 Or App 336, 786 P2d 208 (1990), *aff'd by an*

*equally divided court* 316 Or 492, 851 P2d 1141 (1993), we noted:

> "When the people adopted the initiative and referendum, there were ample opportunities to collect signatures. Parks, town squares and courthouses were common gathering places, and store entrances were usually directly off public sidewalks. The people could meet and conduct their legislative business on public property.
>
> "Today, the situation has substantially changed. Parks and courthouses are not the only, or even primary, foci of modern life. Many people who seldom go to those places now congregate at shopping centers." *Id.* at 343.

We turn to the circumstances of this case in the light of those considerations. We conclude that the sidewalks and parking lots of the San Raphael and Beaverton stores are not the modern-day equivalent of town squares. The scope of noncommercial invitation to these premises is limited. The stores themselves sell only home improvement items. Neither shopping center in which the stores are located provides a broad array of commercial enterprises, nor does either attempt to be a "one stop" shopping area. There is no evidence that the store's parking lots or sidewalks are places where the public is consistently invited to congregate for noncommercial purposes, nor is there evidence that plaintiff has extended an invitation to the public to use its sidewalks and parking lots for noncommercial activity by providing areas for the public to congregate or community bulletin boards. The fact that plaintiff maintains hotdog carts at both stores and that a carnival is held once a year on the other side of the San Raphael shopping center parking lot does not significantly alter the scope of the invitation to the public. The premises that defendants seek to use for their signature-gathering activities are primarily premises that provide parking areas for vehicles and egress and ingress for shoppers. In substance, they are not the functional equivalents of a town square. We conclude that the trial court did not err when it granted plaintiff declaratory and injunctive relief prohibiting defendants from using those areas for purposes of soliciting signatures for initiative petitions.

Affirmed.