Argued and submitted October 11, 1999, affirmed June 7, petition for review
withdrawn September 19, 2000 (331 Or 392)

## FRED MEYER, INC.,
a Delaware corporation,
*Respondent,*

*v.*

## KLEIN CAMPAIGNS, INC.,
an Oregon corporation
and Saul Klein,
*Appellants,*

*and*

## Bob TIERNAN,
Darryl Bonner,
John Lanagan, John Does 1 to 50
and Jane Does 1 to 50,
*Defendants.*

(9802-01392; CA A101975)

5 P3d 1194

Eli D. Stutsman argued the cause for appellants. On the briefs were Gregory W. Byrne and Gregory W. Byrne, P.C.

Charles F. Hinkle argued the cause for respondent. With him on the brief was Stoel Rives LLP.

Eli D. Stutsman filed a brief *amicus curiae* for Progressive Campaigns, Inc.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LANDAU, P. J.

## LANDAU, P. J.

Plaintiff Fred Meyer, Inc. (Fred Meyer), initiated this action for declaratory and injunctive relief concerning the extent to which it has the right to exclude members of the public from gathering initiative petition signatures on the premises of one of its stores, located at Southeast 39th Avenue and Hawthorne Boulevard (the Hawthorne store) in Portland. Defendants are in the business of recruiting and paying individuals to obtain initiative petition signatures. The trial court concluded that the Hawthorne store was not the sort of location at which the public has the right to gather initiative petition signatures and permanently enjoined defendants from gathering initiative petition signatures at that location. Defendants appeal, and we affirm.

The relevant facts are not in dispute. The Hawthorne store is located on a 3.45-acre site. It is approximately 128,000 square feet in size. It is not a "shopping center," at least not in the sense of a large group of nonrelated, separately owned businesses that share common areas and a parking lot. It is a single building, which houses a single retail business. There are no separately owned businesses on the site. The main entrance is from the private parking lot on the premises.

The Hawthorne store is, to be sure, a large business. The store offers a wide variety of consumer items for sale, including apparel, jewelry, home and garden supplies, electronics, tools and hardware, office and school supplies, cards, gifts, books, magazines, furniture, and groceries. There is a delicatessen on site, and customers are permitted to sit at the tables if they have purchased coffee or food from Fred Meyer. The average transaction count at the store is between 35,000 and 40,000 per week.

The Hawthorne store has no public meeting place, no auditorium, no skating rink, no movie theaters, no gardens, no picnic areas. There is a single bulletin board at the store, located in a corridor leading to the restrooms at the back of the building. There is no evidence that Fred Meyer has invited the public to the Hawthorne store to be entertained, to engage in public discussions, or to hear political

speeches. The company does not permit political candidates to campaign at the Hawthorne store. Likewise, the company does not permit the store to be used for pet shows, arts and crafts shows, antique shows, automobile shows, or the like. Once a year, during the winter holidays, it does permit Salvation Army representatives to stand by the entrance.

Defendant Klein Campaigns, Inc., operates a business of gathering initiative petition signatures. Defendant Saul Klein is its sole shareholder and president. We refer to them collectively as "Klein." Klein contracted with certain individuals to collect initiative petition signatures in 1998, agreeing to pay the signature gatherers by the signature. Among the individuals who Klein recruited to collect signatures was Darryl Bonner.

Bonner solicited signatures at the Hawthorne store several days in February 1998. He stood outside the store entrance on the privately owned sidewalk between the store entrance and the parking lot. A customer, James Wilson, encouraged several passing customers not to sign the petition. Bonner threatened Wilson. Wilson complained to the store customer service desk. The store director, hearing of the complaint, asked Bonner to move away from the entrance of the store, so as not to block customer traffic. Bonner ignored the request. Other similar incidents occurred, in which customers or tenant vendors complained of the conduct of Bonner and other signature gatherers. The store director asked the signature gatherers to move. They ignored the requests.

Fred Meyer then initiated this action and moved for an order to show cause why a preliminary injunction should not issue preventing the collection of initiative petition signatures at the Hawthorne store. At the conclusion of the hearing, the trial court ruled for Fred Meyer. The parties stipulated that the hearing could be treated as a trial on the merits. ORCP 79 C(2). The trial court then entered judgment in favor of Fred Meyer. The judgment includes findings that

"[Fred Meyer's] invitation to the public is to enter the premises of the Hawthorne store for the purpose of buying the products it offers for sale. It does not invite the public to enter the premises of the Hawthorne store for the purpose

of being educated or entertained, or for the purpose of engaging in any political activity. It does not wish to have initiative petitioners stand on its property for the purpose of soliciting its customers to sign initiative petitions.

"* * * The Hawthorne store is private property. It does not have the characteristics that make it the functional equivalent of a town square or a forum for assembly by the community.

"* * * * *

"Initiative petitioning activity is outside the scope of [Fred Meyer's] invitation to the public to enter the premises of its Hawthorne store.

"The conduct of * * * Bonner * * * and other persons seeking signatures on initiative petitions on plaintiff's private property at the Hawthorne store has caused and, if permitted, will continue to cause irreparable damage to [Fred Meyer]."

It then enjoins Klein and its agents and employees from entering the premises of the Hawthorne store for the purpose of soliciting persons to sign initiative petitions.

On appeal, Klein argues that the trial court erred in concluding that it and other members of the public do not have a right to solicit initiative petition signatures at the Hawthorne store. According to Klein, the Hawthorne store is the functional equivalent of a town square or forum and, as such, is subject to its right to solicit initiative petition signatures, guaranteed by Article IV, section 1, of the Oregon Constitution.

Fred Meyer first argues that there is, in fact, no right to solicit initiative petition signatures on private property. In the alternative, it argues that, if there is such a right, its Hawthorne store is not the sort of location at which the right may be exercised, because it has never invited the public to treat its store as anything other than a place to purchase consumer goods.

In examining the extent to which Article IV, section 1, creates a right to solicit initiative petition signatures on

private property, we look to the text of the constitutional provision, its enactment history, and the case law construing it. *Priest v. Pearce*, 314 Or 411, 415-16, 840 P2d 65 (1992).

Article IV, section 1, provides, in part:

"(1) The legislative power of the state, except for the initiative and referendum powers reserved to the people, is vested in a Legislative Assembly, consisting of a Senate and a House of Representatives.

"(2)(a) The people reserve to themselves the initiative power, which is to propose laws and amendments to the Constitution and enact or reject them at an election independently of the Legislative Assembly.

"(b) An initiative law may be proposed only by a petition signed by a number of qualified voters equal to six percent of the total number of votes cast for all candidates for Governor at the election at which a Governor was elected for a term of four years next preceding the filing of the petition.

"(c) An initiative amendment to the Constitution may be proposed only by a petition signed by a number of qualified voters equal to eight percent of the total number of votes cast for all candidates for Governor at the election at which a Governor was elected for a term of four years next preceding the filing of the petition."

Nothing in the provision mentions a right to gather initiative petition signatures at any particular place, much less on private property. The enactment history of Article IV, section 1, likewise reveals no mention of establishing a right to solicit initiative petition signatures at any particular location. Thus, were we confronting this issue as a matter of first impression, we might be inclined to agree with Fred Meyer that the Oregon Constitution cannot fairly be read to create such a right.

But we do not confront the issue as a matter of first impression. In *Lloyd Corporation v. Whiffen*, 315 Or 500, 849 P2d 446 (1993), the Oregon Supreme Court found a right to gather initiative petition signatures on at least some private property to be "implicit" in the initiative provisions of Article IV, section 1. According to the court, because access to people is "the life blood" of the initiative power, the constitution

must be read to permit the solicitation of initiative petition signatures at some locations that happen to be private property, subject to reasonable time, place, and manner restrictions. *Id*. at 511-13. Regardless of what the text of the constitution or its enactment might reveal, therefore, we must take it as given that the right to solicit initiative petition signatures exists. The only question properly before us is the scope of that right.

In *Whiffen*, the Supreme Court did not hold that those who solicit initiative petition signatures have an unlimited right to engage in that activity on private property. Instead, it narrowly circumscribed the new right that it recognized. It should be recalled that the precise issue in *Whiffen* was the extent to which members of the public have the right to solicit initiative petition signatures at the Lloyd Center Shopping Center. The Lloyd Center is a traditional, large shopping center that houses over 200 independently owned retailers in an enclosed 80-acre site. It contains a substantial amount of common space, including public walkways, flower gardens, public benches, multiple restaurants, an ice skating rink, open seating areas where the public can gather without purchasing anything from any of the retailers, and public information kiosks.

The court began its opinion by characterizing the issue as "whether the provisions of Article IV, section 1, confer upon persons seeking signatures on initiative petitions the right to go on private property to which the public has been invited." *Id*. at 509-10. Then, in affirming the existence of the right, the court expressly relied on an early United States Supreme Court decision, *Marsh v. Alabama*, 326 US 501, 66 S Ct 276, 90 L Ed 265 (1946), in which the Court held that a Jehovah's Witness had a First Amendment right to distribute religious literature on a sidewalk in a "company town" that was wholly owned by a local shipping corporation. The Court emphasized that the basis for its holding was the fact that the company that owned the town essentially had invited the public to treat portions of the town as public property:

"The more an owner, for his advantage, opens up his property for use by the public in general, the more do his rights

become circumscribed by the statutory and constitutional rights of those who use it. Thus, the owners of privately held bridges, ferries, turnpikes and railroads may not operate them as freely as a farmer does his farm. Since these facilities are built and operated primarily to benefit the public and since their operation is essentially a public function, it is subject to state regulation."

*Id*. at 506 (citation omitted). After quoting from *Marsh*, the Oregon Supreme Court concluded that the right to solicit initiative petition signatures on private property is limited to "the common areas of large shopping centers such as the Lloyd Center." *Whiffen*, 315 Or at 514.

■        Thus, as we read *Whiffen*, the critical determinant in assessing the scope of the right to solicit initiative petition signatures on private property is the scope of the property owner's invitation to the public. If the property owner invites the public to treat its property, or portions of it, as public property, then by that invitation the owner becomes subject to the statutory and constitutional rights that pertain to the use of public property. With respect to the Lloyd Center, the court clearly concluded that there had been an invitation to the public to use its common areas as public property. Accordingly, the court limited the right to collect signatures to that portion of what otherwise is private property.

Our reading of *Whiffen* is confirmed by subsequent case law. In *Safeway, Inc. v. Jane Does 1 Through 50*, 141 Or App 541, 920 P2d 168 (1996), Safeway asked this court to conclude that all 91 of its Oregon stores are not subject to the right that the Supreme Court recognized in *Whiffen*. We declined the request, holding the factual record insufficient to the task. We listed a number of factors that might be relevant to a determination of whether a given store would be subject to *Whiffen*, including the physical characteristics of the store and its relationship to public properties, transportation, streets, and sidewalks. We also noted the importance of

"the characteristics of the invitation to the public by the businesses in the area, the availability of areas for the public to congregate for noncommercial purposes, the number of people who frequent the premises and the purposes for which the premises and common areas are used."

*Safeway, Inc.*, 141 Or App at 545 (footnote omitted).

Similarly, in *Wabban, Inc. v. Brookhart*, 142 Or App 261, 921 P2d 409, *rev den* 324 Or 395 (1996), we held that two HomeBase stores are *not* subject to the right that the court recognized in *Whiffen*. In addressing the issue, we characterized the proper inquiry as "whether these premises, by reason of HomeBase's express or implied invitation to the public, are a forum for assembly by the community." *Id.* at 265. We also expressly addressed the scope of the Supreme Court's holding in *Whiffen* and concluded that the court had held "that signature gatherers could not be enjoined from gathering signatures at the Lloyd Center because the Center's invitation to the public 'was broad and for more than commercial activity.' " *Id.*

The Supreme Court itself has had only two other opportunities to speak to the issue. Unfortunately, in neither case did the court produce a majority opinion that may serve to guide us. The first case is *State v. Cargill*, 100 Or App 336, 786 P2d 208 (1990), *aff'd by an equally divided court* 316 Or 492, 851 P2d 1141 (1993). In that case, this court addressed whether members of the public had the right to collect initiative petition signatures at the very same Hawthorne store at issue in this case. *Cargill* was a criminal trespass case in which some individuals soliciting initiative petition signatures were arrested when they refused to leave the premises when requested by Fred Meyer. The defendants asserted that their arrest was unlawful because they had a constitutional right to solicit signatures on the premises. In concluding that the defendants had a constitutional right to remain on the premises to collect initiative petition signatures, we held that the store was "a modern replacement for the town square or park. It is open to the public, and citizens are invited to come and congregate on the premises." *Id.* at 344. In a similar vein, we noted that,

> "* * * Fred Meyer's invitation to the public was broad and for more than just commercial activity. Its premises, by reason of the owner's invitation, became a forum for assembly by the community."

*Id.* at 348.

Strictly speaking, our comments about the matter were *dictum*. We held that the state bore the burden of proving that the right to collect petition signatures did *not* apply at the Hawthorne store. The prosecution had submitted no evidence whatsoever on the point, resting on a stipulation that it was plaintiff's burden to prove that the right *did* apply to that location. We rejected the stipulation. *Id.* at 340-41. Moreover, there was *no* evidence in *Cargill* about the physical and operational characteristics of the Hawthorne store. The sole evidence in the record consisted of statements of Fred Meyer officials about the operation of Fred Meyer stores generally. That said, the analytical approach that we took in *Cargill* was consistent with *Whiffen* and its progeny in focusing on the scope of the property owner's invitation to treat its property as public. The Supreme Court affirmed 3-3, without an opinion.

The second case is *State v. Dameron*, 316 Or 448, 853 P2d 1285 (1993). That case, too, involved a conviction for criminal trespass at another Fred Meyer store. The defendant asserted as a defense to the charge the constitutional right to remain on the premises guaranteed by Article IV, section 1. This court held that the defendant had established that the premises were of the sort subject to the right established in *Whiffen*, and the Supreme Court affirmed. But a majority of that court could not agree on the reasoning by which the result could be reached. Indeed, the case generated six separate opinions. We therefore proceed to analyze this case in the terms that we have outlined, paying particular attention to the scope of the property owner's invitation to treat its property as a place for noncommercial public assembly.

■■ Klein insists that the appropriate approach is not to focus on the scope of the property owner's invitation to the public, but rather on the need of petition solicitors "to go where the people are." According to Klein:

> "It is the function of the law to harmonize the rights of property owners and petitioners, which it does by balancing the benefits and burdens of petitioning on private property. The right to propose laws is of preeminent importance. For petitioners to have access to centers such as Fred Meyer's Hawthorne store is critical."

Klein's proposed balancing analysis, however, is inconsistent with a fundamental tenet of Oregon constitutionalism, namely that, the courts do not resolve constitutional disputes by balancing competing interests. As the Supreme Court explained in *Libertarian Party of Oregon v. Roberts*, 305 Or 238, 246, 750 P2d 1147 (1988):

> "The difficulty with this balance-of-interests argument is that it assumes that a court can and should attach values to the conflicting interests asserted, aggregate the resulting values and then compare the aggregates to arrive at a decision concerning the constitutionality of the statutes. A court, however, cannot divine the relative importance of interests absent reference to the constitution itself; it is in the constitution that competing interests are balanced. A court's proper function is not to balance interests but to determine what the specific provisions of the constitution require and to apply those requirements to the case before it."

To be sure, as the court in *Whiffen* observed, the power to enact laws by initiative is an important constitutional right, and the ability to gather signatures is important to the practical effectiveness of that right. But the importance of one constitutional right cannot justify the trammeling of another.

■ Turning to the facts of this case, as we have noted, it is undisputed that the Hawthorne store contains no public meeting place, no auditorium, no picnic areas, and no open seating areas where the public can gather to engage in public discussions. Unlike the Lloyd Center, the Hawthorne store has no public walkways, no public information kiosks, no public gardens; indeed, the store has no public "common areas" at all. It has no direct link to public transportation stops. There is, in short, nothing about the configuration of the store that suggests that the public is invited to use the premises for anything other than commercial purposes. There certainly is nothing in the record to suggest that Fred Meyer expressly or impliedly invited the public to use the Hawthorne store as a forum for public assembly.

■ Klein contends that, even assuming that the scope of the owner's invitation to the public is the proper inquiry, the evidence in this case is sufficient to establish a right to solicit

initiative petition signatures at the Hawthorne store. In support of that contention, Klein points to three pieces of evidence: first, that there is a bulletin board on the premises; second, that there is a delicatessen on site; and third, that the Salvation Army is permitted to stand by the entrance during the winter holidays. We are not persuaded. The fact that the company has posted a bulletin board in a hallway next to the restrooms at the rear of the building does not, by any stretch of the imagination, constitute an invitation to the public to treat the entrance of the store as a forum for public assembly. Likewise, the fact that there is a delicatessen, where paying customers are permitted to sit, hardly establishes an invitation to the public to use the premises for purposes of noncommercial public assembly. And the fact that the store may permit the Salvation Army to stand by the entrance several weeks out of the year similarly does not constitute an open invitation to the public to use the area as a community forum.[1]

Klein also contends that our decision in *Cargill* should control the outcome of this case, because it involved the same store. It fails to explain how the *dictum* in that case, which was not based on any evidence as to the particular physical and operational characteristics of the Hawthorne store could bind us in this case, in which there is a complete record concerning those matters. Klein also fails to explain how a decision in a criminal case, in which Fred Meyer was not a party, could bind the company in this action. Finally, even assuming that the decision may be applied to Fred Meyer, *Cargill* would not control the outcome of this case for the simple reason that there is abundant evidence that the relevant physical and operational characteristics of the store have changed substantially since we issued that decision a decade ago.

We conclude that, on this record, there is uncontradicted evidence that Fred Meyer has neither expressly nor implicitly invited the public to treat any portion of the

---

[1] Klein cites no authority for the suggestion that inviting a single charitable organization to use private property for a specified purpose constitutes an invitation to the public to use the property as a forum for public assembly, and we are aware of none.

Hawthorne store as a forum for noncommercial public assembly. The scope of its invitation to the public is to buy its products only, not to congregate on the premises to debate matters of public concern. The trial court therefore was correct in concluding that Klein does not have a constitutional right to solicit initiative petition signatures on the premises.

Affirmed.