Argued and submitted April 10, 2000, remanded with instructions in part;
otherwise affirmed August 1, 2001

## In the Matter of the Marriage of

### Stephen J. ROGER,
*Appellant,*

*and*

### Claudia P. ROGER,
*Respondent.*

## 98-DO-0458-ST; A106297

28 P3d 1264

Margaret H. Leek Leiberan argued the cause and filed the brief for appellant.

Julie Van Handel argued the cause for respondent. With her on the brief was Law Office of Valerie Wright.

Before Edmonds, Presiding Judge, and Kistler and Schuman, Judges.*

SCHUMAN, J.

* Schuman, J., *vice* Armstrong, J.

## SCHUMAN, J.

In this dissolution, the trial court awarded wife spousal and child support, plus, upon the death of husband's father, "33 1/3% of any * * * proceeds" of husband's interest in his family's trust, "the exact terms and assets of which have not been disclosed." Husband assigns error to the support awards and the property division. We affirm the trial court's support awards without discussion and write only to address the trial court's treatment of husband's supposed interest in his family's trust. We review *de novo*, ORS 19.415(3), vacate the trial court's disposition of the supposed trust proceeds, and otherwise affirm.

According to husband, the Roger Family Trust was established in 1993 and has been amended several times. The only version admitted in evidence, however, was the Third Amended Roger Family Trust, executed in 1996 when both of husband's parents were living. This version was a revocable trust that provided $200,000 for the parties' two children, but "specifically and intentionally disinherit[ed]" husband. After husband's mother died, however, the parties came to believe that husband had been, in his terms, "reinherited" by an amended "revocable trust." This amended trust was the main subject of the trial court's property division. The court ruled:

> "[Husband] is the beneficiary of a family trust, the exact terms and assets of which have not been disclosed to [husband]. * * * Because the trust was created during the marriage, [husband's] interest therein is a marital asset subject to the rebuttable presumption of equal contribution. The court finds that the rebuttable presumption has not been overcome * * *. The court hereby awards [wife] 33 1/3% of any family trust proceeds which [husband] receives from the trust upon the death of [husband's] father. The following cap shall be placed upon [wife's] right to receive funds from the trust: She will receive 33 1/3% of all distributions received by [husband] after his father's death up to one-third of the value of the trust as it was on the date of this dissolution decree."

On appeal, husband assigns error to this ruling. Specifically, he argues that he

"has an expectancy to receive an unspecified percentage of the corpus of a revocable living trust established by his still living father. Since this property was not owned by either party during the marriage, it is beyond the authority of the Court to order its division in the dissolution proceeding. Although there is no Oregon law directly on point, related Oregon precedents support the view that this kind of expectancy does not constitute property until husband's father dies. The uniform law in every other state which has considered the issue is that such uncertain expectancies may not be divided by a court in a dissolution proceeding."

Wife counters:

"Husband's interest in his father's trust is similar to an interest in an unvested pension or an unliquidated claim for damages of unknown value, both of which the court has clear authority to divide in a dissolution. Oregon cases to the contrary cited by husband are not relevant in the context of this dissolution because wife was not seeking a present distribution of the value of the trust, but only a share in the future distribution."

Although the parties presume that the issue before us is whether, under Oregon law, a spouse's interest in a revocable trust is property for purposes of division upon dissolution, the threshold issue is whether there is evidence in the record to establish that *this* interest in *this* trust is marital property that the court has the authority to divide under ORS 107.105(1)(f) (1997).[1] Our review of the record reveals

---

[1] Although ORS 107.105(1)(f) was amended in 1999, those amendments apply only to petitions filed on or after October 23, 1999. Or Laws 1999, ch 587, §§ 1, 3. Because the petition for dissolution in this case was filed before that date, we apply ORS 107.105 (1997), which provided, in relevant part:

"(1) Whenever the court grants a decree of marital annulment, dissolution or separation, it has power further to decree as follows:

"* * * * *

"(f) For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. A retirement plan or pension or an interest therein shall be considered as property. The court shall consider the contribution of a spouse as a homemaker as a contribution to the acquisition of marital assets. There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held."

the following: The only trust document in evidence unambiguously provided that husband had no interest in the trust and expressly disinherited him. Husband and wife believed that, after the death of husband's mother, husband's father amended the trust to give husband an interest. Husband testified as follows:

"A  * * * I was then told that there is this other phantom document out there that has reinherited me. * * *

"But I said, 'Well, what are the terms of that?' Which I guess is now getting to your question. He said, 'It's based on a complicated formula, that after the first trustor dies in a revocable living trust it is split on paper 50-50. It is split into an 'A' and a 'B.' And because the $600,000.00 exemption applies, 600,000 will go into the 'B' and the balance will go into the 'A.' We, meaning your mother and I, have always cared very much for your children, but since you were disinherited that left them out in the wind.' He never made any mention of [wife].

"He said, 'So there is a provision in there for their education and support.' You have discussed that already, 200,000 — 100,000 each. 'As far as you are concerned there is a complex formula that the attorney and the CPA are working on which will give you 'X' number of dollars out of the 'A' trust because there [are] only two beneficiaries in the 'B' and the 'B' is worth 600,000.'

"* * * * *

"Then you have the 'A' that is left, which is now what my brother and my father are living off of * * * — as my father now lives with my brother. As that 'A' trust goes down in value, because they are taking a lot of money out of that, my percentage is based on that value on the day that my father passes on. So there is [a] specific amount that I'm told.

"Q  * * * So you are going to get some amount that may depend on how much it has been depleted by the time of your father's passing[?]

"A  As we all know, it is a revocable living trust. I was disinherited once.

"Q  No, the question is, if —

"* * * * *

"Q — he dies and it is there, there is money there, th[e]n you under —

"* * * * *

"Q — some formula have a percentage of it.

"A Correct.

"Q * * * And do you have any idea what the value of the 'A' trust is at this point?

"A No. I have no idea.

"Q Have you ever seen any list of assets or anything on it?

"A No. My brother controls all that and I'd be the last person to see that."

Husband also testified:

"I did ask my father for a copy of the latest trust showing all of this and he said he would have to talk to my brother. And then I didn't hear anything. And a few days later I called back [and] he said, 'I can't send it to you.' I said, 'Why not?' He said, 'Don't argue with me. I can't.' And that's all I know."[2]

Additionally, husband stated that, "[t]o this day[,] many questions still exist in my mind why I was never allowed to see it. No one ever sent me that document."[3]

■ Although husband told the trial court that the Roger Family Trust was revocable, there is no other evidence in the record concerning the substantive provisions of the purported document that "reinherited" him or the specific nature of husband's supposed interest. Husband's testimony that an attorney and an accountant *were working* on a formula to give him a certain amount of money indicates that no interest had been finalized. Moreover, it does not necessarily follow

---

[2] At the time of trial, husband's father was in his 80s and in poor health, and, according to the parties, husband's brother was the acting trustee. The trial court file indicates that husband filed a motion to modify the judgment that is the subject of this appeal after the notice of appeal was filed. According to husband's affidavit in support of that motion, his father died on June 5, 1999.

[3] Husband's statement was made in Exhibit 106, which he signed and sent to wife's attorney in response to a request for production.

from husband's testimony that he was "reinherited" through the creation of a beneficial interest in his family's trust.

■　　On *de novo* review, we are

> "not bound by the findings of fact of the lower court, must make an independent study of the record, weigh the evidence and exercise independent judgment. In the exercise of that judgment we will give due regard to the lower court's opportunity to see and hear witnesses and will not disturb the lower court's decision unless we are convinced that an equitable result has not been reached." *McCoy and McCoy*, 28 Or App 919, 927-28, 562 P2d 207, *on recons* 29 Or App 287, 563 P2d 738 (1977).

On balance, we find that the record does not contain enough information to determine whether "this other phantom document out there" even exists, let alone anything about the nature of husband's interest in it or the more abstract question of whether interests in revocable trusts are property for purposes of division in dissolutions. We therefore must conclude that the trial court erred in considering husband's supposed interest when dividing the property. *Cf. Bidwell and Bidwell*, 170 Or App 239, 244, 12 P3d 76 (2000), *adhered to on recons* 172 Or App 292, 18 P3d 465, *rev den* 332 Or 305 (2001) ("Where the amount of tax consequence or the potential for tax liability is too speculative, we will not take into account the possible effects of taxation in dividing the property."); *Safeway, Inc. v. Jane Does 1 through 50*, 141 Or App 541, 544, 920 P2d 168 (1996) (holding that, on *de novo* review in an appeal from a judgment in a declaratory judgment action, we would not adjudicate the legal issue because "[i]n th[at] case the factual information necessary for the resolution of the issue [was] insufficient").

Here, wife was the proponent of the position that, on the death of husband's father, she was entitled to a share in any distribution to husband from his family's trust. She argued that she should share in any distribution because the trust was a marital asset and there was no evidence to rebut the presumption of equal contribution. In *Massee and Massee*, 328 Or 195, 203, 970 P2d 1203 (1999), the court indicated that the presumption of equal contribution arises only when a party establishes the basic fact that the property at

issue was acquired during the marriage. Thus, *Massee* appears to place the burden of establishing the existence of marital property on the party who seeks to take advantage of the presumption. In this case, that would be wife. That outcome also follows from our reasoning in *Waterman and Waterman,* 158 Or App 267, 974 P2d 256 (1999), where the wife asserted that the husband's spousal support obligation should be based on an income figure higher than the one he claimed. We held that, because there was little evidence to rebut the husband's testimony that a higher wage was not available to him, the spousal support award should be based on his current income. We reasoned that, "when there is evidence in the record of the husband's actual income, it is incumbent upon the wife as the proponent of a higher income figure to demonstrate husband's present ability to pay spousal support based on the higher amount." *Id.* at 271. Because wife here did not establish that husband had an interest in a family trust, or that such a trust even existed, the trial court had no authority to award wife one-third of any trust proceeds that husband might receive. Its award must be vacated.[4]

Remanded with instructions to vacate award to wife of one-third of any trust proceeds husband might receive from his family's trust on death of his father; otherwise affirmed.

---

[4] Because we understand the property division in the trial court's judgment to treat husband's supposed interest in his family's trust separately from the division of the parties' other property, our decision does not affect the remaining terms of the property division.